**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CHARLES G. MENK, III, *et al.*, | |
| Plaintiffs, | Civil Action No.  23-cv-00053-JRR |
| v. | |
| THE MITRE CORPORATION | |
| Defendant. | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

FACTS ............................................................................................................................... 1

LEGAL STANDARD......................................................................................................... 5

SUMMARY OF THE ARGUMENT .................................................................................. 6

ARGUMENT ...................................................................................................................... 8

    A.    Plaintiffs Fail To Plausibly Plead Religious Discrimination. ................................. 8

    B.    Plaintiffs Fail To Plausibly Plead Disability Discrimination.............................. 12

    C.    MITRE's Status As A Government Contractor Does Not Make It A State Actor. ............................................................................................................. 16

    D.    Plaintiffs Constitutional Claims Fail For Additional Reasons............................ 23

    E.    The Procurement Act and EUA Cannot Support Public Policy Discharge Claim.................................................................................................................. 26

    F.    Plaintiffs Cannot Allege Retaliation For Requesting A Religious Accommodation. ................................................................................................. 30

    G.    Plaintiffs Failed To Exhaust Their Administrative Remedies As Required. ........ 31

CONCLUSION.................................................................................................................. 33

93277696v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Africa v. Com. Of Pa.*,
    662 F.2d 1025 (3d Cir. 1981)...................................................................................................10

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974)....................................................................................................................31

*Amira v. Maimonides Hospital*,
    No. 21-cv-3976 RPK, 2022 WL 18034533 (Nov. 30, 2022, E.D. N.Y)..................................21

*Anderson v. United Airlines, Inc.*,
    577 F. Supp.3d 1324 (M.D. Fla. 2021).......................................................................18, 19, 22

*Andre-Rodney v. Hochul*,
    569 F. Supp. 3d 128 (N.D.N.Y 2021)......................................................................................24

*Antunes v. Rector & Visitors of Univ. of Va.*,
    No. 3:21-CV-00042, 2022 WL 4213031 (W.D. Va. Sept. 12, 2022).....................................27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................6, 10, 17

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972).................................................................................................................24

*Beckerich v. St. Elizabeth Med. Ctr.*,
    563 F. Supp.3d 633 (E.D. Ky. 2021) .................................................................................18, 24

*Beckerich v. St. Elizabeth Med. Ctr.*,
    No. CV 21-105-DLB-EBA, 2021 WL 4722915 (E.D. Ky. Sept. 30, 2021)...........................20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................5, 6, 10, 17

adoption. *Bi-Metallic Inv. Co. v. State Bd. Of Education*,
    239 U.S. 441 (1915).................................................................................................................25

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)......................................................................................................20, 21, 22

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
    531 U.S. 288 (2001).................................................................................................................16

93277696v.1

*Bridges v. Houston Methodist Hosp.*,
   2021 WL 2399994 (S.D. Tex. June 12, 2021) .......................................................30

*Brino v. JFK Med. Ctr. Ltd. P'ship*,
   766 F. App'x 921 (11th Cir 2019) .......................................................................20

*Briscoe v. LaHue*,
   663 F.2d 713 (7th Cir. 1981) .................................................................................6

*Brnovich v. Biden*,
   562 F. Supp. 3d 123 (D. Arizona 2022)...............................................................24

*Buckrnan Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001)..............................................................................................30

*Burcham v. City of Los Angeles*,
   562 F. Supp. 3d 694 (C.D. Cal. 2022) .................................................................30

*Caire v. Conifer Value Based Care, LLC*,
   982 F. Supp. 2d 582 (D. Md. 2013)......................................................................12

*Chappell v. S. Md. Hosp., Inc.*,
   320 Md. 483, 578 A.2d 766 (Md. 1990)...............................................................29

*Ciraci v. J.M. Smucker Co.*,
   2021 WL 6064748 (N.D. Ohio Dec. 22, 2021) ....................................................18

*Ciraci v. J.M. Smucker Co.*,
   No. 22-3462, 2023 WL 2486075 (6th Cir. Mar. 14, 2023)..............................17, 20

*City of Boerne v. Flores*,
   117 S. Ct. 2157 (1997)..........................................................................................16

*Constantine v. Rectors and Visitors of George Mason University*,
   411 F.3d 474 (4th Cir. 2005) ...............................................................................26

*Corales v. Bennett*,
   567 F.3d 554 (9th Cir. 2009) ...............................................................................26

*Doe v. San Diego Unified Sch. Dist.*,
   19 F.4th 1173 (9th Cir. 2021) ..............................................................................33

*Drubetskoy v. Wells Fargo Bank, N.A.*,
   No. CIV. CCB-13-2196, 2013 WL 6839508 (D. Md. Dec. 20, 2013) ...................29

*E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*,
   213 F.3d 175 (4th Cir. 2000) ...............................................................................17

iii

*EEOC v. N. Mem'l Health Care*,
  262 F. Supp. 3d 863 (D. Minn. 2017) ...................................................................30

*EEOC v. N. Mem'l Health Care*,
  908 F.3d 1098 (8th Cir. 2018) .............................................................................31

*Employment Division v. Smith*,
  494 U.S. 872 (1990)............................................................................................23

*Eubanks v. Mercy Med. Ctr., Inc.*,
  Civil No. WDQ-15-513, 2015 WL 9255326 (D. Md. Dec. 17, 2015).....................13

*Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*,
  877 F.3d 487 (3d Cir. 2017)................................................................................10

*Feldman v. Law Enforcement Associates Corp.*,
  955 F. Supp. 2d 528 (E.D.N.C. 2013)..................................................................13

*Finkbeiner v. Geisinger Clinic*,
  2022 WL 3702004 (M.D. Pa. Aug. 26, 2022) .............................................18, 19, 21

*Flagg Brothers, Inc. v. Brooks*,
  436 U.S. 149 (1978).............................................................................................19

*Fort Bend County v. Davis*,
  139 S.Ct. 1843 (2019)..........................................................................................31

*Gentzler v. Hamilton Cty.*,
  2017 WL 10403276 (E.D. Tenn. Sept. 20, 2017) ..................................................10

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) ...............................................................................31

*Goldstein v. Chestnut Ridge Volunteer Fire Co.*,
  218 F.3d 337 (4th Cir. 2000) ...............................................................................16

*Harris v. Univ. of Mass., Lowell*,
  2021 WL 3848012 (D. Mass. Aug. 27, 2021) ........................................................23

*Heller v. Doe*,
  509 U.S. 312 (1993).............................................................................................25

*Hensley v. Johnston Co. Bd. of Educ.*,
  No. 5:07-CV-231 F, 2010 WL 5437240, at *12 (Dec. 23, 2010 E.D.N.C.) ..............9

*Jackson v. Metro Edison Co.*,
  419 U.S. 345 (1974).............................................................................................19

iv

*Jacobs v. N.C. Admin. Office of the Courts*,
    780 F.3d 562 (4th Cir. 2015) ...............................................................12

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905) ...............................................................................23

*Johnson et al v. Brown*,
    567 F.Supp. 3d 1230 .............................................................................24

*Johnson v. Tyson Foods, Inc.*,
    2022 WL 2161520 (W.D. Tenn. June 15, 2022) ...........................18, 21

*Jorgenson v. Conduent Transp. Solutions, Inc.*,
    No. SAG-22-01648, 2023 WL 1472022 (D. Md. Feb. 2, 2023)........14, 16

*King v. Marriott Inter. Inc.*,
    160 Md.App. 689, 866 A.2d 895 (2005).............................................28

*King v. Rumsfeld*,
    328 F.3d 145 (4th Cir. 2003) ..................................................................3

*Kiss v. Best Buy Stores*,
    2022 WL 17480936 (D. Or. Dec. 6, 2022) ..........................................18

*Koch v. White*,
    744 F.3d 162 (D.C. Cir. 2014) .............................................................32

*Labram v. Havel*,
    43 F.3d 918 (4th Cir. 1995) ..................................................................17

*Lane v. Piedmont Healthcare*,
    2021 WL 5074494 (N.D. Ga. Oct. 13, 2021) .................................18, 20

*Layman v. MET Lab'ys, Inc.*,
    No. CIV.A. RDB-11-03139, 2012 WL 4018033 (D. Md. Sept. 12, 2012).............................29

*Lee v. Denro, Inc.*,
    91 Md. App. 822, 605 A.2d 1017 (1992).............................................29

*Leggo v. M.C. Dean, Inc.*,
    Civil No. 1:22-CV-374, 2023 WL 1822383 (E.D. Va. Feb. 7, 2023) ..............15, 30

*Leitgeb v. Sark Wire Corporation*,
    2022 WL 18777380 (N.D. Ga. 2022) ..................................................18

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)..............................................................................21

v

*Macon v. J.C. Penney Co.*,
   17 F. Supp. 3d 695 (N.D. Ohio 2014) .................................................................10

*Mangiapane v. Adams*,
   661 F.2d 1388 (D.C. Cir. 1981) .........................................................................32

*Manhattan Cmty. Access Corp. v. Halleck*,
   139 S. Ct. 1921 (2019) .........................................................................16, 18, 22

*Maniscalco v. NYC Dept. of Education*,
   2021 WL 4344267 (E.D.N.Y. Sept. 23, 2021) ...................................................25

*Marte v. Montefiore Medical Center*,
   2022 WL 7059182 (S.D.N.Y. Oct. 12, 2022) .....................................................18

*McCarthy v. Texas Instruments*,
   999 F. Supp. 823 (E.D. Va. 1998) .....................................................................27

*McCutcheon v. Enlivant ES, LLC*,
   2021 WL 5234787 (S.D. W. Va. Nov. 9, 2021) .................................................30

*McKinney v. Pate*,
   20 F.3d 1550 (11th Cir. 1994) ..........................................................................24

*Miller v. Maryland Dep't of Nat. Res.*,
   813 F. App'x 869 (4th Cir. 2020) ......................................................................14

*Mineo v. Transp. Mgt. of Tenn., Inc.*
   694 F. Supp. 417 (M.D. Tenn. 1988) ................................................................22

*Norris v. Stanley*,
   558 F. Supp. 3d 556 (W.D. Mich. 2021) ...........................................................30

*Norris v. Stanley*,
   567 F. Supp. 3d 818 (W.D. Mich. 2021) ...........................................................24

*O'Hailpin v. Hawaiian Airlines, Inc.*,
   583 F. Supp.3d 1294 (D. Hawaii 2022) ............................................................18

*Oklahoma v. Biden*,
   577 F. Supp. 3d 1245 (W.D. Okla. 2021) ..........................................................24

*Papasan v. Allain*,
   478 U.S. 265 (1986) ............................................................................................6

*Pedreira v. Kentucky Baptist Homes for Child, Inc.*,
   579 F.3d 722 (6th Cir. 2009) ..............................................................................9

93277696v.1

*Perlman v. Mayor & City of Baltimore*,
2016 WL 640772 (D. Md. Feb. 18, 2016) ............................................................30

*Peterson v. Honeywell Fed. Mfg. & Techs.*,
2022 WL 36907 (W.D. Mo. Jan. 4, 2022) ............................................................18

*Phillips v. Deal*,
2016 WL 3844210 (M.D. Ga. July 15, 2016) ......................................................20

*Presley v. City of Charlottesville*,
464 F.3d 480 (4th Cir. 2006) .................................................................................6

*Prince v. Mass.*,
321 U.S. 158 (1944) ..............................................................................................23

*Quarles v. Md. Dep't of Human Res.*,
2014 WL 6941336 (D. Md. Dec. 5, 2014) ...........................................................13

*Refat v. Franklin Fin. Servs. Corp.*,
2021 WL 2588789, 2021 U.S. Dist. LEXIS 117768 (M.D. Pa. June 24, 2021).....31

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982) ........................................................................................18, 22

*Rhoades et al v. Savannah River Nuclear Solutions, LLC*,
2021 WL 6133833 (D. S.C. 2021) ........................................................................18

*Sambrano v. United Airlines, Inc.*,
2021 WL 5176691 (N.D. Tex. Nov. 8, 2021) (reversed in part on other
grounds) ................................................................................................................22

*Schneider v. County of Fairfax*,
Civil No. 1:22-CV-871, 2023 WL 2333305 (E.D. Va. March 2, 2023) ...............15

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) .................................................................................4

*Shapiro v. Massengill*,
105 Md. App. 743, 661 A.2d 202 (Md. Ct. Spec. App. 1995).............................28

*Shklyar v. Carboline Co.*,
Civil No. 4:22 CV 391 RWS, 2022 WL 2867073 (E.D. Mo. July 21, 2022),
*aff'd*, No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023) ...........................15

*Simpson v. Welch*,
900 F.2d 33 (4th Cir. 1990) ...................................................................................9

vii

*Smith v. Biden*,
  No. 21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021) .................................................25

*Snir v. Am.*
  *'s Collectibles Network, Inc.*, 2010 WL 2389314, at *5 (E.D. Tenn. June 8,
  2010) .........................................................................................................................................10

*Speaks v. Health Systems Management, Inc.*,
  Civil No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649 (W.D.N.C. Aug.
  17, 2022) ..............................................................................................................................15, 30

*Sutton v. Providence St. Joseph Med. Ctr.*,
  192 F.3d 826 (9th Cir. 1999) .....................................................................................................19

*Szaller v. American Nat. Red Cross*,
  293 F.3d 148 (4th Cir. 2002) .....................................................................................................28

*Taylor v. Virginia Union Univ.*,
  193 F.3d 219 (4th Cir. 1999) .....................................................................................................32

*Together Employees. v. Mass. Gen. Brigham, Inc.*,
  32 F. 4th 82 (1st Cir. 2022).......................................................................................................18

*U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*,
  860 F.3d 131 (4th Cir. 2017) .......................................................................................................9

*United Mine Workers of Am. v. Wellmore Coal Corp.*,
  609 F.2d 1083 (4th Cir. 1994) .....................................................................................................6

*United States v. Miller*,
  982 F.3d 412 (6th Cir. 2020) .....................................................................................................19

*United States v. N.M.*,
  455 U.S. 720 (1982)....................................................................................................................18

*Veronia Sch. Dist. 47J v. Acton*,
  515 U.S. 646 (1995)....................................................................................................................24

*Wade v. Secretary of the Army*,
  796 F.2d 1369 (11th Cir. 1986) ............................................................................................32, 33

*We the Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir. 2021) .......................................................................................................24

*White v. Scrivner*,
  594 F.2d 140 (5th Cir. 1979) .....................................................................................................19

93277696v.1

*Wholey v. Sears Roebuck*,
   370 Md. 38, 803 A.2d 482 (2002) .......................................................................28

*Wikimedia v. National Security Agency*,
   857 F.3d 193 (4th Cir. 2017) ..............................................................................4

*Williams v. Brown*,
   No. 6:21-cv-01332, 2021 WL 4894264 (D. Or. 2021) ........................................25

*Wilson v. Pena*,
   79 F.3d 154 (D.C. Cir. 1996) ...............................................................................32

*Workman v. Mingo Cnty. Bd. Of Educ.*,
   419 F. App'x 348 (4th Cir. 2011) ........................................................................23

*Wright v. Koniag Services*,
   855 F.Supp. 2d 505 (D. Md. 2012) .....................................................................12

*Young v. City of Mount Ranier*,
   238 F.3d 576 (4th Cir. 2001) ...............................................................................6

*Zucht v. King*,
   260 U.S. 174 (1922) .............................................................................................23

**Statutes**

42 U.S.C. § 12102(1) ....................................................................................................13

42 U.S.C. § 12102(3) ....................................................................................................14

**Other Authorities**

Executive Order (EO) 14042 ..........................................................................................2

FAR § 35.017(a)(2)........................................................................................................22

https://www.cdc.gov/mmwr/volumes/71/wr/mm7117e1.htm .......................................2

https://www.vatican.va/roman_curia/congregations/cfaith/documents/rc_con_cfait
   h_doc_20201221_nota-vaccini-anticovid_en.html (last accessed March 13,
   2023) ...................................................................................................................11

Rule 8 ...................................................................................................................6, 17

Rule 12(b)(6)...................................................................................................................6

*SNL Workforce Freedom Alliance v. National Technology and Engineering
   Solutions of Sandia, dba Sandia National Laboratories*, No. 1:22-cv-00001-
   KWP, 2022 WL 3715858, *8-9 (D. New Mexico, Aug. 29, 2022).....................7, 21

93277696v.1

U.S. Equal Employment Opportunity Commission, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K.9 ...........................................................................14

93277696v.1

The MITRE Corporation ("MITRE") respectfully requests dismissal of Plaintiffs' Complaint.

Plaintiffs' Complaint is a political argument against vaccination mandates.  Although Plaintiffs may feel strongly they should not be required to be vaccinated against COVID-19, their political views do not translate into viable legal claims.  Courts have historically and uniformly considered vaccine mandates constitutionally sound and rejected the claims Plaintiffs attempt to bring in this case.

Plaintiffs' Complaint should be dismissed.

### FACTS[1]

**MITRE.**  MITRE is a non-profit corporation that operates federally funded research and development centers addressing challenges affecting the nation's safety and security.  Compl. at ¶¶ 10-12.  According to Plaintiffs, because MITRE "was deeply invested in the government's fight against COVID-19" it is a state actor for purposes of constitutional law.  *Id.* at 104-105.

**MITRE Employs Plaintiffs.**  Plaintiffs worked for MITRE in various unstated positions and at unstated locations.  Compl. at ¶¶ 2, 7, 8, 14.  The Plaintiffs are described as "highly educated with advanced degrees," and "many have rare and specialized knowledge, education, experience and skill sets."  *Id.* at ¶ 14.

**Plaintiffs Claim Immunity To COVID-19.**  Many of the Plaintiffs contracted COVID-19 and, as a result, they believe they acquired "natural immunity" to the disease.  *Id.* at ¶ 15.

---

[1]MITRE assumes the truth of Plaintiffs' facts for purposes of this Motion only.

**Executive Order.**  On September 9, 2021, President Biden issued Executive Order (EO) 14042, requiring parties contracting with the federal government to comply with certain COVID-19 safeguards as prescribed by the Safer Federal Workforce Task Force. [2]  *Id.* at ¶¶ 2, 16.

**MITRE Requires Employees To Get Vaccinated Absent Exemption.**  In October 2021, MITRE required its employees to be vaccinated against COVID-19 and, as part of this requirement, provided an opportunity for employees to obtain exemptions based on sincerely held religious belief conflicting with vaccination and/or medical disability.  *Id.* at ¶ 2.  MITRE's CEO allegedly commented on the applicability of the exemptions.  *Id.* at ¶¶ 17, 21.  MITRE informed employees exemption requests should be submitted by October 22, 2021, and proof of vaccination was required, absent exemption, no later than November 22, 2021.  *Id.* at ¶ 18.

**Plaintiffs Seek Exemption.**  Plaintiffs allegedly hold unspecified religious beliefs which supposedly conflicted in some unstated way with MITRE's COVID-19 mandate.  *Id.* at ¶ 63. Some of the Plaintiffs requested an unspecified exemption to MITRE's vaccination requirement. *Id.* at ¶ 3.

The Complaint alleges that each of the 69 Plaintiffs submitted a religious exemption request but provides no specifics regarding the nature of any particular request, including the purported basis.  *Id.* at ¶ 25.  The Complaint also alleges that four of the 69 Plaintiffs did not submit a request for religious exemption.  *Id.* at ¶¶ 34, 65.  Further, it alleges that three other of the 69 Plaintiffs objected to the vaccine on personal, not religious grounds.  *Id.* at ¶ 40.  The Complaint thus pleads contradictory alleged facts.

---

[2] According to the Centers for Disease Controls, approximately 460,513 Americans died from COVID-19 in 2021 alone.  https://www.cdc.gov/mmwr/volumes/71/wr/mm7117e1.htm.

93277696v.1

The Complaint alleges that "[m]any of the Plaintiffs objected to the vaccines that were being utilized in the United States because…it became well known that all of the available vaccines were developed utilizing cell lines derived from aborted fetal tissue." *Id.* at 98.

Four of the Plaintiffs sought an exemption for unspecified reasons as "a reasonable accommodation under the ADA." *Id.* at ¶ 36. "Plaintiffs claimed that they have a [unstated] medical condition that prevented them from being vaccinated against COVID-19…" *Id.* at ¶ 76. MITRE allegedly "regarded Plaintiffs as disabled because they had the medical status of being unvaccinated." *Id.* at ¶¶ 91, 93.

**MITRE Conducts an Interactive Process with Plaintiffs and Denies Requests.**  As part of its accommodation process, MITRE interviewed employees seeking accommodations. *Id.* at ¶ 38.  MITRE sought to understand the rationale supporting each exemption request. *Id.* at ¶ 38.  MITRE allegedly "made a medical examination or inquiry when, in connection with its vaccine mandate, it inquired into employees' vaccination status and required them to upload proof that they had been vaccinated." *Id.* at ¶ 84.   On or about November 5, 2021, MITRE informed those Plaintiffs who submitted exemption requests that their requests were denied. *Id.* at ¶ 39.

**MITRE Fires Some Plaintiffs; Other Plaintiffs Retire or Resign.**  MITRE terminated the employment of 61 Plaintiffs. *Id*. at ¶ 45, 66.  Four Plaintiffs resigned, and four Plaintiffs retired. *Id.* at ¶ 45.[3]

---

[3] The Complaint does not include a constructive discharge claim and the Title VII and/or ADA claims of these eight Plaintiffs should be dismissed for the additional reason that they did not suffer an adverse employment action. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (requirements for prima facie case of discriminatory discharge).

93277696v.1

**Conclusory and Political Statements.**[4]  According to Plaintiffs, "MITRE was more interested in gaining recognition and currying favor with the current Executive Branch of the Federal Government than it was in protecting the interests of its employees."  *Id.* at ¶ 11.  "It is a well-known fact at MITRE that the corporate leadership of the company has liberal-leaning tendencies and is anti-religious in its outlook."  After "the election of Donald Trump, the leadership of MITRE made public statements to its employees disparaging that outcome.  Similarly, shortly before the election of 2020, the leadership of MITRE made public comments to its employees intended to encourage them to vote for the democrat candidate for president."  *Id.* at ¶ 51.

"The mere act of filing for a religious exemption exposed Plaintiffs' religious views and, by implication, political views, to the scrutiny of MITRE management."  *Id.* at ¶ 53.  "MITRE intentionally planned the mandatory vaccination policy with the conscious intention of eliminating employees holding conservative religious views."  *Id.* at ¶ 56.

"Instead of complying with the limitations imposed by the U.S. Constitution, the President and the executive branch of the U.S. government attempted a work-around—it created a "sword of Damocles" for a large sector of the citizenry.  Either get vaccinated or suffer the extreme financial consequences of losing your job."  *Id.* at ¶ 110.

---

[4] The Complaint is most notable for its considerable conclusory sweep and uncompromising political perspective.  These types of recitations and arguments are not entitled to the presumption of truth and should be disregarded.  *Wikimedia v. National Security Agency*, 857 F.3d 193, 208 (4th Cir. 2017) ("…naked assertions devoid of further factual enhancement are not entitled to the presumption of truth.") (*relying on and quoting, SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Accordingly, and in the interest of brevity, MITRE includes only a few such statements in this Motion.

"Many of the Plaintiffs objected specifically, because in their view, utilizing a product that was developed and/or produced using cell lines derived from aborted fetal tissue, even years after the tissue was obtained, is participation in, and encouragement of, evil."  *Id*. at ¶ 29.

According to Plaintiffs, by November 2021, "the effectiveness of the vaccines to limit the spread of the disease was largely debunked."  *Id.* at ¶ 50.  "Thus…MITRE was attempting to coerce employees into making a medical decision that was not intended to prevent the spread to others, but rather, was intended to reduce that employee's symptoms if he or she was to contract the disease." *Id.* at ¶50.  Plaintiffs contend "COVID-19 vaccines have proven ineffective in combatting the virus for longer than short periods of time."  *Id.* at ¶ 114, and "[t]he vaccine mandate did not effectively promote public health among the public in general or among MITRE's staff in particular."  *Id.* at ¶ 149.

"COVID-19…is a disease or medical condition that arises as a result of living in the 21st century, not unlike other communicable diseases such as the flu, the common cold, HIV, and leprosy."  *Id.* at ¶ 86.

## **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must raise a right to relief above the speculative level; it is not enough to create a mere suspicion of a legally cognizable right of action.  *Id.* at 555.  The complaint must meet the standard of plausibility.  *Id*. at 557.  When a complaint fails to "possess enough heft" to show that the pleader is entitled to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Id*. at 557-58 (citations

omitted).[5]  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint).  As the Supreme Court explained, the standard calls for "more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (*citing Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (the mere "presence ... of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)").  Nor is the Court "bound to accept [Plaintiff's] conclusory allegations regarding the legal effect of the facts alleged."  *United Mine Workers of Am. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir. 1994).

Finally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Twombly,* at 1949-50.  The pleading rules do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id*. (pleading standard under Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (quotations omitted).

## SUMMARY OF THE ARGUMENT

---

[5] The Supreme Court in *Twombly* made clear that the purpose of discovery is for finding the "details" of a case – not for trying to create a case.  *Twombly*, 550 U.S. at 560 n.6.

Plaintiffs' religious discrimination claims (Count I) fail because no Plaintiff plausibly pleads a sincerely held religious belief conflicting with MITRE's vaccination requirement.  The Complaint offers no facts demonstrating any Plaintiff actually held religious beliefs that conflict with COVID-19 vaccination and, instead, offers only formulaic labels and boilerplate.

The Plaintiffs attempting to bring disability discrimination claims do not allege they are qualified individuals with disabilities (Count II) and their claims fail on this independent basis.  Alleging only an unstated medical condition does not satisfy the statutory predicate for such claims.  Plaintiffs' "medical inquiry" claim (Count III) should be dismissed because asking about vaccination status is not an impermissible medical inquiry under the Americans with Disabilities Act.  Plaintiffs' "regarded as" claim (Count IV) has been rejected by numerous courts, including this one, because requiring employees to comply with a vaccination policy cannot plausibly support the inference the employer regarded the employee as disabled.

Plaintiffs' Constitutional and Religious Freedom Restoration Act claims (Counts V, VI, VII, IX, X, XI, XIV) should be dismissed because MITRE is not a state actor for purposes of such claims.  The fact that MITRE operates Federally Funded Research and Development Centers does not change this fact.  Indeed, in *SNL Workforce Freedom Alliance v. National Technology and Engineering Solutions of Sandia, dba Sandia National Laboratories,* the district court found Sandia National Labs, an FFRDC operated by NTESS, was not a state actor with respect to vaccination policy and dismissed plaintiffs' constitutional claims.  No. 1:22-cv-00001-KWP, 2022 WL 3715858, *8-9 (D. New Mexico, Aug. 29, 2022).  Even assuming MITRE was a state actor, these claims should be dismissed because neither vaccination nor employment implicate a fundamental right, and MITRE's policy is rationally related to a legitimate interest—stopping the spread of COVID-19.

7

Plaintiffs do not plausibly plead First Amendment retaliation.  The vaccination policy was enacted before any Plaintiff sought an accommodation, and no Plaintiff identifies any statement made allegedly opposing the policy on First Amendment grounds or connecting such opposition to termination of employment.  A fair reading of the Complaint is that Plaintiffs were fired for not complying with the vaccination policy, not for voicing opposition to it.

Plaintiffs' political attack on the Emergency Use Authorization (EUA) and the President's alleged abuse of authority under the Procurement Act (Counts VIII, XII) do not create viable wrongful discharge claims.  The EUA and Procurement Act cannot support a public policy discharge claim because they are federal, not state laws, and because such broad regulations cannot support what are narrow exceptions to the doctrine of at-will employment.  Further, the EUA does not govern private actors and does not create a private right of action.

Plaintiffs' religious accommodation retaliation claim (Count XIII) fails because under the plain language of the statute, requesting an accommodation is not protected activity.

Finally, Plaintiffs Title VII and ADA claims should be dismissed because Plaintiffs did not exhaust their administrative remedies as required.  Instead of submitting charges to the Equal Employment Opportunity Commission setting forth the facts and circumstances of their individual claims, Plaintiffs submitted identical or nearly identical "copycat" charges, broadly attacking MITRE's policies, but devoid of allegations supporting any individual claims.  Proceeding in this fashion deprives the administrative agency of a full and fair opportunity to investigate, adjudicate and possibly resolve, individual claims.  It cannot constitute exhaustion.

## ARGUMENT

### A.   Plaintiffs Fail To Plausibly Plead Religious Discrimination.

Plaintiffs fail to plausibly plead they were discriminated against based on unspecified religious views.  Instead of identifying their alleged religious beliefs and how they supposedly

conflict with vaccination, Plaintiffs simply invoke a formulaic and boilerplate statement they all had some unspecified "sincerely held religious belief."  This allegation fails to meet required pleading standards and, moreover, opposition to vaccination, in and of itself, is not a religious belief.  Plaintiffs' religious discrimination claims (Count I) should be dismissed.

In order to establish a religious discrimination claim under Title VII, Plaintiffs must show (1) each held a sincere religious belief which conflicted with a job requirement; (2) each informed MITRE of the conflict; and (3) each was disciplined for failing to comply with the requirement.  *U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc*., 860 F.3d 131, 141 (4th Cir. 2017).

Plaintiffs' claims fail because no Plaintiff provides any facts supporting the conclusory assertion they possessed sincerely held religious beliefs. *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990) (affirming dismissal of religious discrimination claim where "Complaint allege[d] religious discrimination but fail[ed] even to state what plaintiff's religious affiliation is…"); *Hensley v. Johnston Co. Bd. of Educ.*, No. 5:07-CV-231 F, 2010 WL 5437240, at *12 (Dec. 23, 2010 E.D.N.C.) (granting motion to dismiss where complaint did not set forth bona fide religious belief).

The conclusory nature of Plaintiffs' pleading is magnified by the fact that all 69 seek to rely on the same blanket statement of sincerely held religious belief.  The Complaint offers no facts plausibly demonstrating that any or each Plaintiff actually had a sincerely held religious belief, or that such belief conflicted with the requirement to get vaccinated.  Simply stating an element of the claim, without factual support, does not satisfy Plaintiffs' pleading obligations and is insufficient to state a plausible entitlement to relief.  *Pedreira v. Kentucky Baptist Homes for Child, Inc*., 579 F.3d 722, 728 (6th Cir. 2009) (affirming dismissal of discrimination claim

where plaintiff offered no particulars about religion that would allow even an inference she was discriminated against on the basis of religion); *Gentzler v. Hamilton Cty.*, 2017 WL 10403276, at *6-7 (E.D. Tenn. Sept. 20, 2017) (dismissing religious discrimination claim because plaintiff did "not make any particular allegations" about her religion); *Macon v. J.C. Penney Co.*, 17 F. Supp. 3d 695, 699 (N.D. Ohio 2014) (amended complaint includes only conclusory allegations about religious observance or practice); *Snir v. Am.'s Collectibles Network, Inc.*, 2010 WL 2389314, at *5 (E.D. Tenn. June 8, 2010) (dismissing claim where plaintiff only summarily alleged he was in protected class based on religion).  Merely asserting each Plaintiff held an unspecified "sincerely held religious belief" is exactly the type of pleading *Twombly* and *Iqbal* specifically prohibit, and Plaintiffs religious discrimination claims should be dismissed.  *Twombly*, 550 U.S. at 1949-50.

Moreover, Plaintiffs must provide sufficient factual allegations plausibly demonstrating that, whatever they believe, it addresses "fundamental and ultimate questions having to do with deep and imponderable matters," are "comprehensive in nature," and are accompanied by "certain formal and external signs." *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487, 491-493 (3d Cir. 2017) (quoting *Africa v. Com. Of Pa.*, 662 F.2d 1025, 1031 (3d Cir. 1981)).  In *Fallon*, the Third Circuit rejected a religious discrimination claim where the employee offered a belief that the flu vaccination "would do more harm than good," and that "one should not harm their [sic] own body." *Id.*  The court similarly did not find plaintiff's claim that he had to follow his conscience and refuse the vaccine persuasive. *Id.*  The same outcome is warranted here, where Plaintiffs only mention that "many religious objections to COVID-19 vaccines centered on the role of human embryonic stem cell products used in the development and/or production of the vaccines."  Compl. at ¶ 28.  This sort of boilerplate language, devoid of reference to any actual religious beliefs, is not enough to withstand a motion

10

to dismiss.  Indeed, alleging the vaccine is "evil" or that simply requesting an exemption "exposed" unstated "conservative religious views," cannot substitute for pleading the elements: a religious belief, held sincerely, which conflicts with vaccination.  Plaintiffs' political views are no substitute for sincerely held religious beliefs that conflict with vaccination.

Plaintiffs' citation to alleged statistics that "20 percent of Catholics and other Christians were against the COVID-19 vaccinations" and that "it was reported that approximately 10% of Americans were of the view that the COVID-19 vaccines conflicted with their religious beliefs" does not enhance the plausibility of their claim.  Compl. ¶ 27.  Objection to the vaccine by some percentage of the American population on purportedly religious grounds does not speak to the alleged religious objection of any individual plaintiff, the sincerity of such beliefs, or how they manifest conflict.  Rather, this allegation serves only to demonstrate the intentional vagaries of Plaintiff's Complaint, while at the same time underscoring that the vast majority of Catholics and Christians *did not* object to the COVID-19 vaccines on religious grounds.  Consequently, even labelling oneself as "Catholic" or "Christian" is insufficient to state a sincerely-held, personal religious belief in conflict with the mandatory vaccination policy.[6]

Other than offering these general comments, which no Plaintiff adopts or incorporates as their own alleged religious views, Plaintiffs do not make any effort to allege that any one of them has sincerely held religious beliefs which conflict with a vaccine requirement due to the potential use of stem cells in vaccine testing or for any other reason.  Indeed, the fact that Plaintiffs intentionally avoided classifying "all" alleged religious objections as based on this ground

---

[6] Indeed, the Vatican (with the approval of the Pope) made clear that Catholics were not required to object to the COVID-19 vaccinations on morality grounds based on the use of two lines of stem cells from an aborted fetus in product development. https://www.vatican.va/roman_curia/congregations/cfaith/documents/rc_con_cfaith_doc_2020122 1_nota-vaccini-anticovid_en.html (last accessed March 13, 2023).

necessarily implies that at least some portion of Plaintiffs *did not* object on this basis – and it is the only alleged religious basis in the Complaint.  This shortcoming is well underscored by the nature of Plaintiffs' Complaint, a fair reading of which is that Plaintiffs opposed vaccination on political and personal grounds, not for religious reasons.  Plaintiffs social, political and even moral personal views do not constitute objections based on sincerely held religious beliefs. *Wright v. Koniag Services*, 855 F.Supp. 2d 505, 509 (D. Md. 2012) (where complaint pleads facts merely consistent with liability, it stops short of the line between possibility and plausibility).

Count I should be dismissed.

**B.      Plaintiffs Fail To Plausibly Plead Disability Discrimination.**

Plaintiffs' ADA claims (Counts II, III and IV) fail because they do not plead they are qualified individuals with disabilities.  Further, the law is clear that asking about vaccination status is not an impermissible medical inquiry under the ADA and requiring vaccination does not create an ADA "regarded as" claim.

**No Allegation of Disability (Count II).**  The few Plaintiffs claiming disability discrimination neither allege, nor offer facts to support, that each has a disability that substantially limits a major life activity.  The failure to plead this predicate requirement independently warrants dismissal.

"To establish a claim for disability discrimination under the ADA, a plaintiff must prove (1) that she has a disability, (2) that she is a qualified individual for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (citations omitted); *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 599 (D. Md. 2013) ("to prove a disability discrimination claim under either federal or Maryland law, a

plaintiff must make the same showing that he is a 'qualified individual with a disability' ").  A disability is either "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1).

Plaintiffs' failure to plead a disability substantially limiting a major life activity necessarily dooms their claims.  *Eubanks v. Mercy Med. Ctr., Inc.,* Civil No. WDQ-15-513, 2015 WL 9255326, at *6 (D. Md. Dec. 17, 2015) (dismissing ADA claim because plaintiff seeking flu shot exemption did not supply facts showing allergies substantially limited major life activity); *Feldman v. Law Enforcement Associates Corp.,* 955 F. Supp. 2d 528, 539 (E.D.N.C. 2013) ("Here, [Plaintiff] has not offered any evidence beyond his overnight visit to the hospital to show that the [stated condition] substantially impaired the major life activity of working or any other major life activity."); *Quarles v. Md. Dep't of Human Res.,* 2014 WL 6941336, at *3-4 (D. Md. Dec. 5, 2014) (Complaint lacks specific factual allegations regarding the type of condition, and how it limits or otherwise impacts plaintiff's life).

Instead of making the required factual showing, Plaintiffs loosely claim they had an unstated "medical condition" which prevented them from being vaccinated.  Compl. at ¶ 76.  Plaintiffs do not, however, identify the medical condition at issue or offer any facts showing it is a disability; nor do they allege any physical or mental impairment which substantially limits a major life activity.  42 U.S.C. § 12102(1).  If a Plaintiff had a medical condition which constituted a disability under the ADA, it would be easy enough to state what it is and how it substantially limits a major life activity.  Here, Plaintiffs failure to do so must be understood as an admission they do not have a disability as required to make this claim.  *Eubanks,* 2015 WL 9255326, at *6.

Plaintiffs' disability discrimination claims should be dismissed.

**Asking About Vaccination Status Is Permissible (Count III).**  Plaintiffs' medical inquiry claim should be dismissed because an employer may permissibly inquire about and require employees to provide vaccination status.  *See Jorgenson v. Conduent Transp. Solutions, Inc.*, No. SAG-22-01648, 2023 WL 1472022, at *5 (D. Md. Feb. 2, 2023) (employer's COVID-19 vaccine "attestation requirement did not constitute a medical examination or an inquiry about a disability or disabling condition."); *see also* U.S. Equal Employment Opportunity Commission, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, at section K.9, available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K.9 (ADA does not prevent an employer from inquiring about or requesting documentation regarding an employee's COVID-19 vaccination status).

Plaintiffs do not and cannot allege that MITRE asked for anything more than vaccination status and their "unlawful medical inquiry" claim should be dismissed.

**Being Unvaccinated Does Not Create A "Regarded As" Claim (Count IV).**  Plaintiffs contend MITRE regarded them as disabled because they were unvaccinated.  Compl. at ¶ 91.  Vaccination status cannot, however, serve as a basis to allege "regarded as" discrimination under the Americans with Disabilities Act.  In order to assert a regarded as claim, a plaintiff must establish discrimination because of a perceived physical or mental impairment.  *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 876 (4th Cir. 2020) (quoting 42 U.S.C. § 12102(3)).  Being unvaccinated is not a physical or mental impairment under the law.

Accordingly, courts have uniformly rejected the claim that vaccination status somehow gives rise to a viable regarded as claim.  *Jorgenson*, 2023 WL 1472022, at *4 (requiring

14

compliance with vaccination policy does not support inference employer regarded employee as disabled); *Leggo v. M.C. Dean, Inc.*, Civil No. 1:22-CV-374 (LMB/IDD), 2023 WL 1822383, at *4 (E.D. Va. Feb. 7, 2023) (company decision requiring employees to attest to their vaccination status does not plausibly reflect a determination or belief that employee is disabled)*; Schneider v. County of Fairfax*, Civil No. 1:22-CV-871 (LMB/WEF), 2023 WL 2333305, at *5 (E.D. Va. March 2, 2023) (refusal to follow requirement to report vaccination status does not create regarded as claim); *Speaks v. Health Systems Management, Inc.*, Civil No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) (no plausible regarded as claim based on decision not to get vaccinated); *Shklyar v. Carboline Co.,* Civil No. 4:22 CV 391 RWS, 2022 WL 2867073 (E.D. Mo. July 21, 2022), *aff'd*, No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023) ("to infer that [an employer] regarded [an employee] as having a disability" based on a "generally applicable" COVID-19 mitigation policy "would require inferring that [the employer] regarded all of its ... employees as having a disability").

Further, "[r]efusing to get a vaccine required by an employer is not itself an 'impairment' of any sort," but rather a wholly "personal choice." *Speaks*, 2022 WL 3448649 at *5 (rejecting claim that defendant classified plaintiff as impaired under the ADA by requiring her to comply with a mandatory COVID-19 vaccination policy, because plaintiff's position "would mean that [defendant] considered all its employees to have an 'impairment,' which is of course not a plausible inference").

Finally, even if Plaintiffs had or could plausibly allege any of the predicate requirements for a viable regarded as ADA claim (and they cannot and did not), their ADA claims fail for the simple reason that a fair reading of the Complaint makes clear Plaintiffs were not fired based on alleged animus toward them because of unstated disability; those who did not voluntarily depart

were separated for their failure to comply with MITRE's policy.  *Jorgenson*, 2023 WL 1472022, at * 5 (dismissing vaccine ADA claim that did not plausibly allege discrimination, "[Plaintiff] was simply terminated for failing to adhere to company policy.").

Plaintiffs' disability claims should be dismissed.

## C.    <u>MITRE's Status As A Government Contractor Does Not Make It A State Actor.</u>

Plaintiffs' Constitutional claims (Counts V, VI, VII, IX, X, XI, XIV) fail because MITRE is not a state actor.  Plaintiffs allege a panoply of Constitutional and statutory claims which sound, if at all, against the federal government and not against MITRE.

An entity is only liable for Constitutional violations if the entity is a state actor. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 297 (2001) (settled that only state actors can violate constitutional rights).[7]  Indeed, "a private entity can qualify as a state actor in a few limited circumstances" only. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019).  In *Halleck,* the Supreme Court identified three circumstances: "(i) when the private entity performs a traditional, exclusive public function, (ii) when the government compels the private entity to take a particular action, or (iii) when the government acts jointly with the private entity." *Id.* (citations omitted); *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 342 (4th Cir. 2000).  None is plausibly pleaded here.

Rather, attempting to create claims where none exist and avoid the inescapable fact that private entities are rarely considered state actors, Plaintiffs resort to an already debunked misguided theory, citing formulaic, scattershot snippets of the various state actor tests:

> Under the tests articulated by the Supreme Court, MITRE, for purposes of the vaccine mandate, was a state actor. MITRE was deeply invested in the government's fight against COVID-19. There is a close nexus between the U.S. government and the challenged action. MITRE's actions may be fairly treated as that of the U.S. government itself. The U.S.

---

[7] Like Plaintiffs' Constitutional claims, the Religious Freedom Restoration Act (Count VI), applies only to the federal government.  *City of Boerne v. Flores*, 117 S. Ct. 2157 (1997).

government has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that jointly of the U.S. government and MITRE. MITRE was a willful participant in joint activity with the U.S. government and its agents. MITRE was delegated a public function by the U.S. government. MITRE's conduct was so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon governmental action.

Compl. at ¶ 105.

The Sixth Circuit recently made short work of the arguments Plaintiffs make here, *i.e.,* that federal contractors are converted to state actors by virtue of requiring employee vaccination pursuant to the President's Executive Order. *Ciraci v. J.M. Smucker Co.*, No. 22-3462, 2023 WL 2486075, at *7 (6th Cir. Mar. 14, 2023) ("This principle—that compliance with federal law or status as a federal contractor by itself does not make a private entity a public one—cuts the heart out of claimants' case. At most, Smucker's required claimants to vaccinate themselves in accordance with the President's Executive Order. But compliance with federal law, without more, does not make private firms state actors."). This Court should similarly hold.

Indeed, simply repeating some of the standards used to determine whether an entity is a state actor, without factual support, does not and cannot meet the *Iqbal* and *Twombly* pleading standards. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79; *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir. 1995) (conclusory assertions need not be accepted); *E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000) (court need not accept legal conclusions drawn from facts). Plaintiffs' Constitutional claims should be dismissed.

**No Court has Found A Government Contractor Is A State Actor By Virtue of the Executive Order.**  Even assuming Plaintiffs had or could offer facts instead of conclusions in support of their assertion that MITRE was a state actor, it would not change the outcome.  As a

17

matter of long-standing law, common sense and practical reality, the existence of a government contract does not automatically establish state action. *United States v. N.M.,* 455 U.S. 720, 739-40 (1982) (DOE contractors on federal property not instrumentalities of the government); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) (acts of private contractors do not become acts of government by reason of their significant or even total engagement on public contracts).

Accordingly, courts uniformly have rejected the argument that employers who implement vaccine requirements are state actors giving rise to constitutional claims. *See, e.g.*, *Ciraci v. J.M. Smucker Co.*, 2021 WL 6064748, at *2 (N.D. Ohio Dec. 22, 2021)*; Rhoades et al v. Savannah River Nuclear Solutions, LLC*, 2021 WL 6133833, at *3 (D. S.C. 2021); *Leitgeb v. Sark Wire Corporation*, 2022 WL 18777380, at * 5 (N.D. Ga. 2022); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp.3d 1294, 1306 (D. Hawaii 2022); *Marte v. Montefiore Medical Center*, 2022 WL 7059182, at *5 (S.D.N.Y. Oct. 12, 2022); *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp.3d 633, 639-40, (E.D. Ky. 2021); *Kiss v. Best Buy Stores*, 2022 WL 17480936, at *3-6 (D. Or. Dec. 6, 2022); *Peterson v. Honeywell Fed. Mfg. & Techs.*, 2022 WL 36907, at *3 (W.D. Mo. Jan. 4, 2022); *Lane v. Piedmont Healthcare*, 2021 WL 5074494, at *2-3 (N.D. Ga. Oct. 13, 2021); *Together Employees. v. Mass. Gen. Brigham, Inc.*, 32 F. 4th 82, 86-87 (1st Cir. 2022); *Anderson v. United Airlines, Inc.*, 577 F. Supp.3d 1324, 1334 (M.D. Fla. 2021); *Finkbeiner v. Geisinger Clinic*, 2022 WL 3702004, at *5-6 (M.D. Pa. Aug. 26, 2022); *Johnson v. Tyson Foods, Inc.*, 2022 WL 2161520, at *4-6 (W.D. Tenn. June 15, 2022). This Court should do the same.

**MITRE's Vaccination Requirement is Not an Exclusive Public Function.** To "qualify as a traditional, exclusive public function…the government must have traditionally *and* exclusively performed the function." *Halleck,* 139 S.Ct. at 1929 (emphasis in original). Vaccination is not such a function. *Johnson v. Tyson Foods, Inc.*, 2022 WL 2161520, at *4

18

(W.D. Tenn. June 15, 2022) (private business's implementation of an employee vaccination policy is not akin to any of "those limited activities – for example running a city — that have 'traditionally and exclusively' been performed by the government.") (quoting *United States v. Miller*, 982 F.3d 412, 423 (6th Cir. 2020)); *Anderson v. United Airlines Inc.*, 577 F. Supp. 3d 1324, 1333 (M.D. Fla. 2021) (plaintiff did not plausibly allege that his private employer had taken on a public function in imposing a vaccine mandate); *Finkbeiner*, 2022 WL 3702004, at *6 (government does not have exclusive power to determine COVID-19 safety measures).  Neither MITRE's decision to implement a vaccination policy nor to deny Plaintiffs' exemption requests, resulting in the separation of their employment, are traditional and exclusive government functions.  MITRE is not a state actor.

**The Executive Order Did Not Compel MITRE to Deny Exemptions or Fire Plaintiffs.**  MITRE's Vaccination Policy, which complied with the EO, indisputably provided exemptions to those who met MITRE's lawful criteria. The existence of a statute or regulation does nothing to convert those who take steps to comply with it into state actors.  *Jackson v. Metro Edison Co.,* 419 U.S. 345, 350 (1974) (mere fact that business subject to regulation, even if extensive and detailed, does not convert its actions into the state's for purposes of a constitutional violation); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 841 (9th Cir. 1999) ("compulsion in the form of a generally applicable law, without more, is insufficient to deem a private entity a governmental actor."); *White v. Scrivner*, 594 F.2d 140, 143 (5th Cir. 1979) (liability will not attach to private parties in light of a state statute "[a]bsent some compulsion or some overt state involvement." ) (relying on *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149 (1978)).

19

Were this otherwise, given the scope and extent of federal regulation of business, every government contractor would have long ago been considered a state actor. *Brino v. JFK Med. Ctr. Ltd. P'ship*, 766 F. App'x 921, 923 (11th Cir 2019). Indeed, "[t]he fact that the executive branch has made a statement that certain companies must implement a vaccine mandate in exchange for the receipt of federal reimbursement dollars doesn't convert [a private entity] into a state actor. Nor does receipt of government funding." *Beckerich v. St. Elizabeth Med. Ctr.*, No. CV 21-105-DLB-EBA, 2021 WL 4722915, at *1 (E.D. Ky. Sept. 30, 2021) (emphasis added).

Plaintiffs do not and cannot allege that the U.S. government directed or coerced MITRE to deny any one, or all, of their exemption requests or terminate the employment of any or all of them. The *Ciraci* court offers further assistance on this point:

> To assess coercion, we examine "the specific conduct of which [the claimants] complain []," meaning the denial of their religious exemptions. In this case, the federal government never required Smucker's to vaccinate the claimants, for the Executive Order did not tell Smucker's to deny exemptions to anyone. It told Smucker's to *grant* religious exemptions to those legally entitled to them, and let Smucker's decide on its own who qualified. The claimants contend that Smucker's has exercised its discretion under the Executive Order stingily, not that Smucker's has been dragooned by the government into denying an exemption.

> As in *Blum*, the President's Executive Order gave Smucker's discretion to decide which of its employees merited religious exemptions. When Smucker's exercised that discretion, the government did not coerce it.

*Ciraci*, 2023 WL 2486075, at *4 (internal citations omitted) (emphasis in original).

Like Smucker's, MITRE applied its lawful criteria uncoerced and was not compelled by the government to make specific exemption or termination decisions. *Lane v. Piedmont Healthcare, Inc.*, 2021 WL 5074494, at *3 (N.D. Ga. Oct. 13, 2021) (hospital not a state actor by adoption of Governor's COVID-19 protocols because state did not collaborate in enforcement of policies); *Phillips v. Deal,* 2016 WL 3844210, at *4 (M.D. Ga. July 15, 2016) (government did not encourage termination of employment). Without compulsion or state involvement in the

93277696v.1

denial of Plaintiffs' exemption requests and the termination of their employment, Plaintiffs' allegations do not satisfy the state compulsion test. *Blum v. Yaretsky*, 457 U.S. 991 (1982) (despite New York law enabling patient transfers, because plaintiffs failed to show state was responsible for decision to discharge or transfer particular patients, there was no state action under compulsion test); *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937 (1982) (plaintiff must show government acted in committing conduct complained of).

Put differently, Plaintiffs do not and cannot allege the EO compelled the denial of their exemption requests or the termination of their employment. Absent government compulsion with respect to those decisions, MITRE cannot qualify as a state actor. *Amira v. Maimonides Hospital*, No. 21-cv-3976 RPK, 2022 WL 18034533, at * 8 (Nov. 30, 2022, E.D. N.Y) (under compulsion test plaintiff must show government compelled *particular* activity that caused constitutional injury) (emphasis in original) (citations omitted).

**No Joint Action.**  Plaintiffs similarly fail to plausibly plead joint action in support of state actor status. There is no allegation, nor could there be, that MITRE and the federal government partnered to deny exemptions and terminate employment. As with the other prongs of the state actor test, the existence of a federal regulation requiring vaccination in certain circumstances fails to translate into joint action. *Tyson Foods, Inc*., 2022 WL 2161520, at *6 (reliance on CDC/OSHA direction does not make Tyson state actor under joint action test); *Finkbeiner*, 2022 WL 3702004, at *6 (no joint state action where plaintiff alleged hospital adopted vaccine mandate based on CDC guidance). And the fact MITRE operates FFRDCs and receives significant money from the government does nothing to change the analysis. *SNL Workforce Freedom Alliance v. National Technology and Engineering Solutions of Sandia, dba Sandia National Laboratories,* 2022 WL 3715858, *8-9 (D. New Mexico, Aug. 29, 2022)

21

(finding Sandia National Labs, an FFRDC operated by NTESS, was not a state actor because of vaccinate mandate); *Blum*, 457 U.S. at 1011 (1982) (private nursing home not state actor despite extensive regulation and 90% of fees from state); *Rendell–Baker v. Kohn*, 457 U.S. 830, 840 (1982) (private school that treats students with drug/alcohol problems not state actor despite operating under contract with the state and receiving 90% state funding); *Mineo v. Transp. Mgt. of Tenn., Inc*. 694 F. Supp. 417, 419, 423-24 (M.D. Tenn. 1988) (no joint relationship even though company's sole function was to operate city transit system, and government supplied office space, equipment etc.); FAR § 35.017(a)(2) (FFRDCs operate as autonomous organization or as an identifiable separate operating unit of a parent organization).

As the Supreme Court recently said, "the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function.  The same principle applies if the government funds or subsidizes a private entity."  *Halleck* 139 S. Ct. at 1931-32.

In sum, MITRE is not a state actor and this Court should "decline to elevate statutory protections from private company discrimination to the level of constitutional protections from governmental encroachment."  *Sambrano v. United Airlines, Inc.*, 2021 WL 5176691, at *5 (N.D. Tex. Nov. 8, 2021) (reversed in part on other grounds); *Anderson v. United Airlines, Inc.*, 577 F. Supp. 3d 1324, 1333 (D. M.D. Fl. 2021) (noting that only in "rare circumstances" can a private party be considered a state actor).  Counts V, VI, VII, IX, X, XI, XIV of Plaintiffs' Complaint should be dismissed.

22

**D.**     **Plaintiffs Constitutional Claims Fail For Additional Reasons.**

Even assuming MITRE were a state actor, Plaintiffs' "kitchen sink" Constitutional claims are not plead with sufficient specificity as to any Plaintiff to survive dismissal, and, moreover, fail for several additional reasons.

**Vaccination Requirements Do Not Trample Constitutional Rights.**  The Constitution permits general regulations which incidentally burden religions practices.  *Employment Division v. Smith*, 494 U.S. 872, 879 (1990) ("right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes conduct that his religion prescribes (or proscribes).").  This settled principle means that states may impose vaccine requirements without violating First Amendment freedom of expression rights.  *Prince v. Mass.*, 321 U.S. 158, 166–67 (1944) ("[t]he right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death"); *Workman v. Mingo Cnty. Bd. Of Educ.*, 419 F. App'x 348, 354 (4th Cir. 2011) (school vaccination requirement does not violate First Amendment rights).  In fact, there is no constitutional obligation to offer a religious exemption to a vaccination requirement.  *Harris v. Univ. of Mass., Lowell*, 2021 WL 3848012, at *7 (D. Mass. Aug. 27, 2021) (citations omitted). Plaintiffs do not and cannot allege MITRE's vaccine policy was not generally applicable to all employees and, in fact, they concede that it was.  Compl. at ¶ 17.  MITRE's generally applicable policy does not run afoul of First Amendment protections and Count V should be dismissed.

**Neither Vaccination Nor Employment Implicate A Fundamental Right.**  The law is clear that there is no fundamental right to refuse vaccination, which necessarily defeats Plaintiffs Equal Protection and Due Process Claims.  *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *Zucht v. King*, 260 U.S. 174, 176 (1922) (upholding vaccination requirement for public school

students and stating, "[I]t is within the police power of a state to provide for compulsory vaccination."); *Veronia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995) (finding vaccine mandate does not violate Fourth Amendment); *Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1264 (W.D. Okla. 2021) (there is no fundamental right to refuse vaccination)[8]; *Johnson et al v. Brown*, 567 F.Supp. 3d 1230, 1249 (D. Or. 2021) ("The Supreme Court has not recognized any fundamental right to refuse vaccination.").

On this point, it is important to recognize that the issue here does not burden a Constitutional right. "The right that is being burdened is the right to employment." *Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128, 139 (N.D.N.Y 2021); *Norris v. Stanley,* 567 F. Supp. 3d 818, 821 (W.D. Mich. 2021) (vaccination policy does not force employee to forgo rights); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) (vaccination is a condition of employment, the state is not forcibly vaccinating employees).  In other words, the employment relationship alone does not give rise to Constitutional claims.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972) (no substantive due process right to employment); *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) (employment rights do not enjoy constitutional protection).  As part of the at-will employment relationship, Plaintiffs are absolutely free to make choices about where they work and why.  *Beckerich v. St. Elizabeth Medical Center,* 563 F. Supp. 3d 633, 644 (E.D. Ky. 2021) (plaintiffs are choosing whether to comply with a condition of

---

[8] In *Brnovich v. Biden*, the Arizona District Court found the President exceeded his authority under the Procurement Act with respect to the vaccine mandate, but still had no difficulty summarily rejecting the plaintiffs' Fifth Amendment claim founded on a right to bodily integrity, which the Plaintiffs in this case include in their kitchen sink approach.  562 F. Supp. 3d 123, 163 (D. Arizona 2022) (there is no substantive due process right to refuse vaccination while an employee of a federal contractor).

93277696v.1

employment or deal with the consequences of that choice).  Plaintiffs' choices do not implicate Constitutional concerns.

**A Vaccine Mandate Is Rationally Related To A Legitimate Interest.**  Absent a fundamental right, the claims must be considered under rational basis review.  *Heller v. Doe*, 509 U.S. 312, 319 (1993) (under rational basis review, a [vaccine mandate] is presumed constitutional and we accept the government's basis even when there is an imperfect fit between ends and means).  And there can be little argument that inhibiting the spread of COVID-19 is a legitimate interest, and that requiring vaccination is rationally related to that interest.  *Williams v. Brown*, No. 6:21-cv-01332, 2021 WL 4894264, * 9 (D. Or. 2021) (Court has no trouble concluding Oregon vaccine mandate is rationally related to legitimate state interest, stopping spread of COVID-19); *Smith v. Biden*, No. 21-cv-19457, 2021 WL 5195688, at *6 (D.N.J. Nov. 8, 2021) ("[E]very court that has considered the constitutionality of a COVID-19 vaccine mandate by an employer or university has" held that it satisfied rational basis scrutiny.") (citations omitted).

Plaintiffs' Due Process[9] and Equal Protection[10] (Counts VII, IX, X and IV) claims must therefore be dismissed.

---

[9] Plaintiffs' procedural Due Process claim also fails because there is no argument, nor could there be, that MITRE had to give each employee an opportunity to be heard regarding the policy's adoption.  *Bi-Metallic Inv. Co. v. State Bd. Of Education*, 239 U.S. 441, 445 (1915) (when rule applies to more than a few, impracticable to give everyone voice in adoption).  Of course, Plaintiffs do not allege what process they were denied, they largely repeat that their bodily integrity was somehow violated by the policy.  Compl. at ¶ 160.

[10] Differentiating between vaccinated and unvaccinated employees does not target any suspect class and is rationally related to a legitimate interest.  *Maniscalco v. NYC Dept. of Education*, 2021 WL 4344267, at *3 (E.D.N.Y. Sept. 23, 2021) (rational basis for different treatment for vaccinate and unvaccinated).

25

**First Amendment Retaliation.**  Plaintiffs also allege that they were fired because they voiced unspecified opposition to MITRE's vaccine mandate.  Compl. at ¶ 186 (Count XIV).  This claim fares no better because Plaintiffs do not plead the protected speech any of them supposedly engaged in, and they do nothing to attempt to connect unspecified protected activity with the separation of their employment.  Instead, they (inconsistently and implausibly) argue they were fired for not getting vaccinated.  Compl. ¶ 1 (employees fired because they "refused to comply with a COVID-19 vaccine mandate").  This is insufficient to state a First Amendment retaliation claim.  *Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 499 (4th Cir. 2005) (plaintiff claiming First Amendment retaliation must allege that "(1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct."); *Corales v. Bennett*, 567 F.3d 554, 563 (9th Cir. 2009) (third prong requires that "the protected activity was a substantial or motivating factor in the defendant's conduct.").  Of course, Plaintiffs' exemption requests cannot serve as the basis for this claim, since MITRE's vaccination policy, which included the requirement that employees comply or risk loss of employment, was necessarily announced before Plaintiffs sought an exemption to it.  Plaintiffs' First Amendment claims should be dismissed.

**E.**     <u>**The Procurement Act and EUA Cannot Support Public Policy Discharge Claim.**</u>

Plaintiffs' wrongful discharge in violation of public policy claims (Counts VIII, XII) fail under Virginia law because they are premised on federal, not state, law.  Moreover, they fail under both Maryland and Virginia law because they do not and cannot identify the clear mandate of public policy violated by employment termination.

Plaintiffs allege that the Executive Order requiring federal contractors to vaccinate employees violated the Procurement Act.  Compl. at ¶ 139.  They claim the EO exceeded the

scope of the President's authority.  *Id.*  Based on this assertion, they then claim MITRE also violated the Procurement Act by implementing its vaccination requirement, and that "terminating employees pursuant to an illegal executive order…constitutes wrongful discharge in violation of public policy."  Plaintiffs also claim that they should have been given an opportunity to refuse vaccination under the Emergency Use Authorization.  Compl. at ¶ 171.

It is hard to discern a good faith basis for these claims, even assuming they are simply an attempt to expand the law.  If Plaintiffs believe the President exceeded his authority under the Procurement Act, assuming they have standing to do so, they should have sued the President in his official capacity, not MITRE.  Moreover, there is no legal authority supporting the idea that either of these regulations can support a public policy discharge claim.

Under Virginia law,[11] it is clear that only state laws give rise to wrongful discharge in violation of public policy claims (*Bowman* claims).  *McCarthy v. Texas Instruments*, 999 F. Supp. 823, 829 (E.D. Va. 1998) (rejecting federal law basis for *Bowman* claim and stating, "A *Bowman* claim must find root in a state statute.").  Another District Court in this Circuit has recently rejected attempted reliance on federal authority to support a *Bowman* claim in a similar context.  In *Antunes v. Rector & Visitors of Univ. of Va.*, No. 3:21-CV-00042, 2022 WL 4213031, at *9 (W.D. Va. Sept. 12, 2022), the plaintiff asserted that she was discharged in contravention of public policy when she was terminated following her failure to comply with her employers' mandatory vaccination policy.  The Court dismissed plaintiff's wrongful discharge

---

[11] Plaintiffs' Complaint does not identify any state law upon which they seek to rely.  (Count VIII).  MITRE is headquartered in Virginia, the decisions were made in Virginia, and 29 of the Plaintiffs reside in Virginia.  Virginia law should apply.  Regardless of whether Virginia, Maryland or some other state law applies, however, MITRE has found no state authority permitting public policy claims based on the Procurement Act or the EUA.

claim because she failed to articulate "(1) any Virginia state law that qualifies for the first or second *Bowman* exception, or (2) facts supporting any refusal to engage in a criminal act."

Plaintiff's reliance on the Procurement Act or EUA is equally infirm, compelling dismissal. *Id.* ("Plaintiff alleges only a violation of federal constitutional freedoms in support of her wrongful discharge claim, rather than a Virginia statute expressing state public policy. As such, her claim does not fit within a *Bowman* exception to the common-law at-will employment rule. Her wrongful termination charge shall thus be dismissed.").

Likewise, assuming for the sake of argument that any Plaintiffs who worked in Maryland could rely upon Maryland law for this claim, the result is the same.  Under Maryland law,[12] courts have "found a public policy sufficiently clear to support [a wrongful termination] action in only two limited circumstances: where an employee has been discharged for refusing to violate the law, or where an employee has been fired for exercising a legal right or duty." *Szaller v. American Nat. Red Cross*, 293 F.3d 148, 152 (4th Cir. 2002) (citations omitted).  Plaintiffs make no such allegation here and, moreover, they completely fail to allege facts demonstrating how, even assuming the EO violated the Procurement Act (and there is no such allegation or judicial finding), this would constitute a viable public policy claim.  *Wholey v. Sears Roebuck*, 370 Md. 38, 53, 803 A.2d 482 (2002) (broad federal regulations cannot form basis for public policy claim).  Plaintiffs make no effort whatsoever to provide the requisite particularity and enunciate the public policy contained within the Procurement Act which ostensibly gives rise to a viable

---

[12] To establish a claim for wrongful discharge, a plaintiff must show: (1) that he was discharged; (2) that the dismissal violated some clear mandate of public policy; and (3) that there is a nexus between the defendant and the decision to fire him.  *Shapiro v. Massengill*, 105 Md. App. 743, 661 A.2d 202, 213 (Md. Ct. Spec. App. 1995).  The plaintiff must demonstrate the public policy with clarity, specificity, and authority.  *King v. Marriott Inter. Inc.*, 160 Md.App. 689, 704, 866 A.2d 895, 903 (2005) (plaintiff must "identify the source of the public policy with particularity").

public policy claim.  There is none.  Simply alleging the Procurement Act was violated does nothing to elucidate the alleged public policy prohibiting discharge of an at-will employee supposedly found somewhere in its pages.

Moreover, Plaintiff's Complaint makes clear they were terminated for failing to come into compliance with MITRE's company-wide vaccination mandate "implemented in response to" the EO.  Compl. at ¶ 2.  Plaintiffs cannot ground this claim on an argument that a vaccine mandate is generally unlawful or that asking employees to get vaccinated is akin to forcing a public (rather than personal) policy or legal violation.[13]  Plaintiffs' termination for failing to comply with a company's vaccination program cannot support liability,  *See also Lee v. Denro, Inc.*, 91 Md. App. 822, 834–35, 605 A.2d 1017, 1023–24 (1992) ("A number of other courts have also concluded that an employee who is dismissed for raising objections to the employer's business, management or safety practices, even if correct in his or her allegations, does not state a cause of action for abusive discharge. Thus, where, as here, there is no affirmative direction by an employer that an employee violate a recognized public policy and the employee contravenes normal operating procedures in airing his or her grievances, an employer is free to discharge that employee at will.")

---

[13] Plaintiffs cannot argue that termination for failure to comply with the vaccine mandate when the individual is allegedly entitled to a medical or religious objection could serve as the basis for this claim, as the statutes annunciating any purported public policy with respect to accommodations already provides a remedy.  *Drubetskoy v. Wells Fargo Bank, N.A.,* No. CIV. CCB-13-2196, 2013 WL 6839508, at *4 (D. Md. Dec. 20, 2013) ("Thus, if the relevant public policy is contained in a statute and the statute provides a remedy, the tort of wrongful discharge is not available."); *Layman v. MET Lab'ys, Inc.*, No. CIV.A. RDB-11-03139, 2012 WL 4018033, at *7 (D. Md. Sept. 12, 2012) ("Under Maryland law, the tort of wrongful discharge is not available where statutory remedies exist.") (citing *Chappell v. S. Md. Hosp., Inc.,* 320 Md. 483, 578 A.2d 766, 773 (Md. 1990)) (rejecting a wrongful discharge claim where the individual was able to "pursue a remedy under both the state and federal anti-discrimination statutes for his discharge from employment for apprising his employer of allegedly discriminatory employment practices").

29

Plaintiffs EUA claim fails for the additional reason that the regulation does not govern private actors and does not create a private cause of action.  *Buckrnan Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance" with Food and Drug Act); *McCutcheon v. Enlivant ES, LLC*, 2021 WL 5234787, * 3 (S.D. W. Va. Nov. 9, 2021); *Bridges v. Houston Methodist Hosp.*, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021). [14]

**F.   <u>Plaintiffs Cannot Allege Retaliation For Requesting A Religious Accommodation.</u>**

MITRE announced and implemented its vaccination policy in October 2021.  Compl. at ¶ 2.  As part of that policy, the Company made clear employees needed to provide proof of vaccination or have an exemption, on or before November 22, 2021.  *Id.*  Following the announcement of the policy, some of the Plaintiffs sought exemptions.  *Id.* at ¶ 3.

To the extent Plaintiffs claim that their requests for exemption constituted opposition to the policy, this claim must fail.  *M.C. Dean, Inc*., 2023 WL 1822383, *6 (since vaccination policy announced before opposition to policy, no plausible connection between opposition and implementation of the policy) (relying on *Speaks,* 2022 WL 3448649, at * 6)).

And to the extent Plaintiffs claim their requests for accommodation constituted protected activity, this claim also fails, because such a request is not protected activity under Title VII. *Perlman v. Mayor & City of Baltimore*, 2016 WL 640772, at *6 (D. Md. Feb. 18, 2016) (accommodation request neither opposes any practice nor participates in investigation—it is not protected activity); *EEOC v. N. Mem'l Health Care*, 262 F. Supp. 3d 863, 867 (D. Minn. 2017)

---

[14] In August 2021, before Plaintiffs were fired, the FDA approved the Pfizer Comirnaty COVID-19 Vaccine, rendering any claim that Plaintiffs had the ability to refuse the vaccine moot. *Burcham v. City of Los Angeles*, 562 F. Supp. 3d 694, 707–08 (C.D. Cal. 2022); *Norris v. Stanley*, 558 F. Supp. 3d 556, 559-60 (W.D. Mich. 2021).

93277696v.1

(requesting religious accommodation is not protected activity); *Refat v. Franklin Fin. Servs. Corp.*, 2021 WL 2588789, at *6 n.6, 2021 U.S. Dist. LEXIS 117768 at *15 n.6 (M.D. Pa. June 24, 2021) (holding an employee fails to state a Title VII retaliation claim based on an employer's denial of a religious accommodation request "because 'merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation' ") (emphasis added) (quoting *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018)).

Count XIII should be dismissed.

**G.     Plaintiffs Failed To Exhaust Their Administrative Remedies As Required.**

Plaintiffs filed identical or nearly identical "copycat" charges.  Copies of five such charges are attached as Exh. 1.[15]  Despite signing their charges under oath, Plaintiffs made no effort to provide information specific to their individual claims and, as such, denied the EEOC and MITRE the ability to investigate and respond.  Plaintiffs use of copycat charges subverted the important administrative agency process and cannot fairly be said to constitute exhaustion.

Under Title VII, administrative remedies must be exhausted by filing a charge with the Equal Employment Opportunity Commission or a qualifying state agency and receiving a notice of right to sue.  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).  The exhaustion requirement is mandatory and a failure to comply may result in dismissal of claims.  *Fort Bend County v. Davis*, 139 S.Ct. 1843, 1851-2 (2019).  The "purpose of exhaustion is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer.  The employee is required to make a good faith effort to cooperate with the agency

---

[15] The Court may consider documents incorporated into the Complaint by reference, like the copy-cat EEOC charges.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).

and provide all relevant, available information. *Wade v. Secretary of the Army*, 796 F.2d 1369,

1377 (11th Cir. 1986) (relying on *Mangiapane v. Adams*, 661 F.2d 1388, 1390-91 (D.C. Cir.

1981) (agency should play major role in developing record)); *Taylor v. Virginia Union Univ.,*

193 F.3d 219, 239 (4th Cir. 1999) ("This exhaustion requirement is meant to preserve judicial

economy by banning claims that have not been sufficiently investigated following an EEOC

complaint.").

Instead of providing even basic factually specific information about their individual

claims, Plaintiffs opted for ease, and each signed the same charge attacking the vaccination

requirement.  The charges falsely claimed all Plaintiffs worked in Annapolis, Maryland, and had

a disability—without identifying the alleged disability.  Exh.  1.  Further, the charges broadly

attacked MITRE, offering the same political perspective amply demonstrated by the Complaint:

> Charging Party believes and therefore asserts that MITRE wrongfully and intentionally
> violated complainant's right to be free from religious and/or medical discrimination
> because it was attempting to garner favor with the current administration—all of its
> funding comes from the Federal government, and it wanted to demonstrate solidarity with
> the President instead of accommodating complainant's religious convictions.

Exh. 1 at 7.

And like the Complaint, the Plaintiffs did not identify or explain the alleged "religious

conviction" at issue, instead opting for the same sweeping label, "[my] religious beliefs are

sincerely held."  *Id.* at 5.  The copycat charges also felt the need to add, "I can assure you that I

am not committing fraud."  *Id.*

"A plaintiff's suit 'will be barred for failure to exhaust administrative remedies' if he

forces an agency to dismiss or cancel a complaint by failing to provide sufficient information to

enable the agency to investigate the claim."  *Koch v. White*, 744 F.3d 162, 165 (D.C. Cir. 2014)

(quoting *Wilson v. Pena*, 79 F.3d 154, 164 (D.C. Cir. 1996)).  Making a political and legal

32

argument cannot substitute for providing basic facts which might support individual claims.  And filing a copycat charge cannot be said to constitute a "good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available to him or her."  *Wade*, 796 F.2d at 1376.  Plaintiffs failed to exhaust their administrative remedies and their claims should be dismissed.

## **CONCLUSION**

MITRE, like many employers, instituted a legally permissible vaccination requirement to protect employees and society during an unprecedented time.  *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 (9th Cir. 2021) ("[V]accines are safe and effective at preventing the spread of COVID-19, and [a] vaccination mandate is therefore likely to promote the health and safety of the [affected community], as well as the broader community.").  Plaintiffs' exemption requests were denied because, not unlike the allegations in the Complaint and their charges, they offered no support for the exemptions sought.  It has been and remains clear that Plaintiffs' opposition to mandatory vaccination is political and secular, not religious or based on disability.  Plaintiffs' political views, no matter how strongly held, do not create viable legal claims.  Plaintiffs' Complaint should be dismissed.

93277696v.1

DATED:  March 20, 2023

Respectfully submitted,

THE MITRE CORPORATION

By: */s/ Raymond C. Baldwin*

    Raymond C. Baldwin, Bar No. 25449
    rbaldwin@seyfarth.com
    Christine M. Costantino, Bar No. 28582
    ccostantino@seyfarth.com
    SEYFARTH SHAW LLP
    975 F Street, NW
    Washington, DC 20004
    (202) 463-2400 (ph)
    (202) 828-5393 (fax)

    *Counsel for MITRE Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March 2023, the foregoing Motion to Dismiss and Memorandum of Points and Authorities in Support was filed with the Clerk of the Court and uploaded to the CM/ECF system, which will send notification of such filing to the e-mail address on file with the Court:

> Francis J. Collins, Esq.
> KAHN, SMITH & COLLINS, P.A.
> 201 N. Charles Street, Tenth Floor
> Baltimore, MD 21201
>
> *Counsel for Plaintiffs*

> */s/ Raymond C. Baldwin*
> Raymond C. Baldwin

93277696v.1