# In The
# United States District Court
## for the
## District of Maryland

CHARLES G. MENK III, *et al.*

     *Plaintiffs,*

vs.                                    Civil Action # 1:23-cv-00053-JRR

THE MITRE CORPORATION
     *Defendant.*

-o0o-

## REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO REOPEN THE CASE UNDER FED. R. CIV. P. 52 AND FED. R. CIV. P. 59 AND FOR LEAVE TO AMEND COMPLAINT UNDER FED. R. CIV. P. 15.

### Table of Contents

1. Standard to be applied in ruling on Plaintiffs' Motion. .................................................. 1
2. Relevance of supporting documents. ............................................................................. 2
3. Futility ........................................................................................................................... 4
4. Unfair Prejudice ............................................................................................................. 4
5. The affidavits attached to the Motion to Amend (Ex. D) are appropriate. .................... 6
6. Failure to file exemption requests .................................................................................. 9
7. "Patently defective" exemption requests. ...................................................................... 9
8. Individual Claims ......................................................................................................... 11
   A. Brooks. ..................................................................................................................... 11
   B. Cross-Dawkins. ....................................................................................................... 12
   C. Davis ....................................................................................................................... 12
   D. DiGioia .................................................................................................................... 13
   E. Fandozzi .................................................................................................................. 13
   F. George ..................................................................................................................... 14

i

G.      Grieco................................................................................................... 14

H.      Hobbs .................................................................................................. 14

I.      Kollings ............................................................................................... 14

J.      Kuhn .................................................................................................... 15

K.      Parrish ................................................................................................. 15

L.      Sacher .................................................................................................. 15

M.      Spooner ................................................................................................ 15

N.      Ward .................................................................................................... 16

O.      Werner.................................................................................................. 16

P.      Zapletal ............................................................................................... 16

9.      Plaintiffs with personal reasons for not being vaccinated. ........................................ 17

10.     Counts II-XIV. ............................................................................................. 18

11.     Conclusion .................................................................................................. 18

# Table of Authorities

## Cases

*Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013)..........................................15

*Bond v. United States*, 742 Fed. Appx.  735, 2018 WL 3689250 (4th Cir. 2018). ........................1

*Chapman v. Fennec Pharmaceuticals Inc.*, No. 1:20CV812, 2023 WL 2241992, (M.D.N.C. Feb. 15, 2023), *report and recommendation adopted*, No. 1:20CV812, 2023 WL 3073652 (M.D.N.C. Mar. 2, 2023)..........................................................................................................2

*E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988)......................................15

*Foman v. Davis,* 371 U.S. 178, 182 (1962). ....................................................................................2

*Fowler v. Rhode Island*, 345 U.S. 67 (1953) ................................................................................10

*Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815 (2d Cir. 2003) ................................11

*Gardner-Alfred v. Fed. Reserve Bank of New York*, No. 22-CV-1585 LJL, 2023 WL 253580 (S.D.N.Y. Jan. 18, 2023) ............................................................................................................10

*Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011) .................................................1

*Logar v. W. Virginia Univ. Bd. of Governors*, No. CIV.A. 1:10CV201, 2012 WL 243692 (N.D.W. Va. Jan. 25, 2012)...........................................................................................................1

*Mullin v. Balicki*, 875 F.3d 140 (3d Cir. 2017).............................................................................5

*Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707 (1981)....................................10, 11

*Together Employees v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022) ..............................................................................................................10

*United States v. Ballard*, 322 U.S. 78, 86 (1944) ........................................................................11

*United States v. Manneh*, 645 F. Supp. 2d 98 (E.D.N.Y. 2008) ..................................................11

*United States v. Seeger*, 380 U.S. 163 (1965) .......................................................................10, 11

## Statutes

42 U.S.C. § 2000e(j) ......................................................................................................................10

## Rules

Fed. R. Civ. P. 15(a) .................................................................................................................1, 4, 5

Fed. R. Civ. P. 10 (c) .......................................................................................................................3

Fed. R. Civ. P. 59............................................................................................................................2, 4

1. **Standard to be applied in ruling on Plaintiffs' Motion.**

Plaintiffs are seeking to file their first amendment to the complaint. Defendant moved to dismiss the original complaint and Plaintiffs responded to that Motion including a request, on the first page of the Response, with a request for leave to amend if the Court should find the complaint lacking. When the Court dismissed the original complaint, including the claims for religious discrimination, the Court did not explicitly deny permission to amend. Plaintiffs timely filed a motion to reopen and for leave to amend under Federal Rules of Civil Procedure ("FRCP") 15.

The standard that applies when the Court considers the instant motion is the standard for amending a complaint under FRCP 15 and is not the heavier burden applicable to a motion to reconsider the Court's previous orders:

> A district court may not grant a post-judgment motion to amend a complaint unless the court first vacates its judgment pursuant to Fed. R. Civ. P. 59(e) or 60(b). *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 470 (4th Cir. 2011). "To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards. The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a)." *Id.* at 471. That is, the "court should evaluate a postjudgment motion to amend the complaint under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." Id. (internal quotation marks omitted).

*Bond v. United States*, 742 Fed. Appx. 735, 736, 2018 WL 3689250 (4th Cir. 2018).

As explained by the District Court in the Middle District of North Carolina, applying the rule set out above in *Bond v. U.S.*:

> "Rule 15(a) is designed to allow parties the opportunity to amend pleadings to assert matters which were overlooked or were unknown at the time the party interposed the original complaint[,]" *Logar v. W. Virginia Univ. Bd. of Governors*, No. CIV.A. 1:10CV201, 2012 WL 243692, at *9 (N.D.W. Va. Jan. 25, 2012) (internal quotations and citation omitted), *aff'd*, 493 F. App'x 460 (4th Cir. 2012), and "is intended to advance a basic goal ... to allow maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities," *id.* Granting a motion to amend a complaint is within the discretion of the Court, "but outright

refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

*Chapman v. Fennec Pharmaceuticals Inc.*, No. 1:20CV812, 2023 WL 2241992, at *4 (M.D.N.C. Feb. 15, 2023), *report and recommendation adopted*, No. 1:20CV812, 2023 WL 3073652 (M.D.N.C. Mar. 2, 2023).

In short, Defendant's arguments based on the standard that applies to Fed. R. Civ. Proc. 59 (ECF No. 59, 8-12) are inapt. Plaintiffs need not show a change in controlling law, account for new evidence, show a clear error of law, or show manifest injustice. Plaintiffs need not show that the Court's earlier decision is a metaphorical five-week-old, unrefrigerated dead fish. ECF No. 59, 11. Inasmuch as this is the first amendment, Defendant can show no prejudice, and the Plaintiffs acted with the utmost good faith, it would be an abuse of discretion to prevent Plaintiffs from amending the complaint.

**2. Relevance of supporting documents.**

Defendant complains that Plaintiffs have engaged in a "document dump" as part of the Motion to Reopen. Although the documents comprise many pages, Plaintiffs included only a few exhibits, the first two of which must specifically be part of a Motion to Amend:

1. Ex. A, Proposed amended complaint, in redline.

2. Ex. B, Proposed amended complaint, clean copy.

3. Ex. C, EEOC Brief, showing that the EEOC supports employment discrimination claims for employees whose COVID-19 vaccination religious accommodation requests were rejected, and the employees were fired.

4. Ex. D, Plaintiffs' affidavits related to their personal accommodation requests and employment circumstances.

2

5.   Ex. 1 to the proposed amended complaint, Exemption Request forms.

In short, the exhibits are not a "document dump," something more typically describing defense discovery tactics.  Rather, the exhibits are appropriate and intended to address the deficiencies raised by the Court in its Memorandum Opinion. ECF No. 54, 24-33.

Defendant's carping about the volume of documents is nothing short of hypocritical. Defendant contended that Plaintiffs did not provide enough factual allegations in the religious discrimination count.  The proposed amended complaint addresses that contention.  It includes factual allegations related to each specific Plaintiff and attaches the exemption request forms they submitted to Defendant to provide the full context related to each Plaintiff.  Had Plaintiffs failed to include the Exemption Request forms Defendant would undoubtedly have complained that, in amending the complaint, Plaintiffs cherry-picked parts of their exemption request forms.  Although Ex. 1 includes a large number of pages, it is what both Defendant and the Court claimed was lacking – the details as to each of the sixty-nine Plaintiffs.  The number of pages is related to the number of Plaintiffs.  It was not an attempt to burden the Court with "hunting for truffles" or an attempt to engage in "gamesmanship."  Def.'s Memo, ECF No. 59, 14, 12.

Defendant contends that the exemption requests are not "written instruments." *Id.* at 15. The relevance of this contention is not clear.  The ability to append documents to a complaint under Fed. R. Civ. Proc. 10 (c) is not limited to written instruments such as formal contracts.  For example, in a defamation claim, it is appropriate to include as an exhibit to the complaint the defamatory publication.  Since there are sixty-nine Plaintiffs, it is understandable that there would be a large number of exemption request forms appended as exhibits.  These documents are integral to the allegations of the complaint and supply the factual detail expected by the Court.  In most cases, Plaintiffs quoted the most relevant part of Ex. 1 in the proposed amended complaint for each

3

Plaintiff. *See* ECF No. 56-3, ¶¶ 40 to 112.  Defendant had these documents in its files and cannot claim surprise.  They are organized alphabetically, refer to specific plaintiffs, and do not require the court to "sift through documents to determine whether a viable claim exists."  ECF No. 59, 7.

### 3.   Futility

Defendant contends that the proposed amendments should be considered futile.  This is one of the standards that the Court must consider in deciding whether to permit the Plaintiffs the opportunity to amend the complaint.  However, the Court must decide the motion in light of FRCP 15(a)(2) which states that permission to amend should be "freely give[n]."

Plaintiffs initially filed an eighty-two-page complaint.  *See* ECF No. 1.  In granting the Motion to Dismiss the Court explained that the religious discrimination count did not have enough facts as to each Plaintiff.  *See* ECF No. 54, 24-33.  The proposed amended complaint provides those facts.  Plaintiffs contend that they have adequately supported the religious discrimination count by including the additional information about each plaintiff in the amended complaint and in Ex. 1.  The proper resolution is not to deny the amendment but, rather, to allow the amendment and then analyze whether the amended complaint states a claim.  Denying the amendment would constitute an abuse of discretion and violate FRCP 15(a)(2).

### 4.   Unfair Prejudice

Defendant argues that the proposed amended complaint is "Plaintiffs' [] second bite at the apple to relitigate the same exact issues decided in the Court's Order granting Plaintiffs' Motion to Dismiss."  *See* ECF No. 59, 7.  Without being specific about the support for this argument, it appears that Defendant views permitting one amendment as unfair.  This is specious.  The Courts are cautioned that the liberal amendment policy in FRCP 15(a)(2) is particularly potent in civil rights cases: "[D]istrict courts must offer amendment [in civil rights cases]—irrespective of

whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (citations omitted).

Plaintiffs are seeking leave to amend to address the deficiencies identified by the Court. The proposed amended complaint adds more factual allegations. Now, the issue before the Court will be whether the amended complaint has enough factual allegations to support a claim for religious discrimination. This is a wholly new issue and does not relitigate anything. The standard for deciding this motion is found in FRCP 15(a)(2) and there is no benefit to this Court, the Fourth Circuit, or the parties, in denying the amendment. The case should be decided on the merits, including all of the allegations and documents that comprise the proposed amended complaint.

Defendant argues that it would be unfairly prejudiced if the Court permits Plaintiffs to amend the complaint. Defendant specifically points to the filing of the accommodation request forms and the affidavits, Ex. D to the Plaintiffs' Motion. Defendant is wrong.

There can be no prejudice created by attaching the exemption request forms to the complaint. Defendant has had these forms since the fall of 2021. There is no surprise, and the forms were merely the first step in Plaintiffs' request for exemptions. Defendant reviewed the forms and rejected the exemptions. Defendant does not explain how or why it would be prejudiced other than to allude to the fact that, by appending the forms, the facts about each Plaintiff's exemption request are in the record.

The affidavits are included in the Motion to Reopen and to Permit an Amendment. They are not an exhibit to the proposed amended complaint. Defendant's claim of prejudice is inexplicable. The affidavits support the argument that the Court should reopen the case and allow Plaintiffs to amend. Plaintiffs are not asking the Court to "hunt" for viable claims – those claims are in the proposed amended complaint (including Ex. 1 thereto). The affidavits give the Court

5

the background of each person's claim and justify why the Court ought to allow amendment and address the merits.

**5.   The affidavits attached to the Motion to Amend (Ex. D) are appropriate.**

Plaintiffs support the motion to permit the amendment with affidavits from nearly every Plaintiff.  These affidavits are intended to give the Court the specific facts related to each Plaintiff's employment.   The Court held that Plaintiffs painted with too broad a brush in the original complaint.   The proposed amended complaint has the specific facts about each Plaintiffs' exemption requests.   *See* ECF No. 56-3, ¶¶ 40-112.   The affidavits (Ex. D to the Motion) supplement the proposed amended complaint and verify the allegations in the proposed amended complaint.

Many facts are the same for each Plaintiff.  They all worked for the same employer.  They were all fired at the same time.  They were all fired for refusing to be vaccinated against COVID-19.  None were given an explanation for their termination.  None were given an explanation for why their exemption request was denied.  Defendant treated all of the Plaintiffs the same by terminating them at the same time, refusing to explain its reasoning, and refusing to pay severance pay.  Yet, some facts are different for each Plaintiff.  Some Plaintiffs are Catholic, others are Born-Again Christians, and others have a unique religious foundation for their opposition to the vaccines.  Each Plaintiff expressed his or her opposition to the vaccines using different words, concepts, religious principles, and doctrine.  And each Plaintiff had slightly different working conditions – some worked remotely, some worked at government sites, and some worked at MITRE sites.  Those differences are provided to the Court in detail – in alphabetical order.

It is Plaintiffs' contention that the totality of Defendant's actions supports the view that Defendant was prejudiced against religious objectors and fired any employee who did not get

vaccinated and asserted a religious reason.  In Plaintiffs' view, all of the Plaintiffs were victims of Defendant's overarching refusal to accommodate religious dissenters.  This is obvious because Defendant fired employees who clearly articulated religious opposition to the vaccines and were working remotely, even before the pandemic.  There simply is no rational explanation for terminating those employees other than to conclude that Defendant was intent upon ridding itself of every religious dissenter, regardless for whether it could provide reasonable accommodations. Plaintiffs contend that Defendant's mindset applied to all of the Plaintiffs, even those who did a poor job of articulating their religious opposition.  In short, no matter how eloquently or knowledgeably Plaintiffs articulated their sincerely held religious beliefs, Defendant would never have granted their requests.  Defendant was intent on removing the religious dissenters from its payroll to achieve its motive of vaccinating 100 percent of its staff.  It did this with malice at the expense of those, like Plaintiffs, who had sincere religious opposition to the vaccine.  Essentially, the strongest claims support and add credence to the weaker claims where the Plaintiffs did not explain their religious opposition as clearly as they might have.  The entire body of the sixty-nine claims supports the view that Defendant's mindset, its reason for terminating the Plaintiffs, included an anti-religious animus.

If the Court is intent on exploring the details of each Plaintiff's circumstances, it now has the facts available to it.  It can examine the full religious exemption request form for each Plaintiff and determine if that Plaintiff sufficiently articulated his or her religious opposition to the vaccines. This is what Defendant seeks by listing certain Plaintiffs, but it ignores the larger picture.  In a religious discrimination case, the intent of the Defendant can be, but is not always, relevant.  For example, if Defendant terminated all Born-Again Christians because it found out that proponents of that religion overwhelmingly opposed vaccination, this would constitute classic religious

discrimination.  The issue of accommodation would not even come up.  There would be a "but for" relationship between religion and the adverse employment action.  When the trier of fact sees that Defendant rejected all, or nearly all, religious accommodation requests, the trier of fact could reasonably find an anti-religious animus on the part of Defendant.

Intent to discriminate on the basis of religion is not always an issue in religious discrimination cases.  For example, as we see in this case, Plaintiffs declared their religious opposition to the vaccines.  This gave rise to the employer's duty to consider reasonable accommodations.  It is theoretically possible that the employer was not motivated against religion but was motivated by greed – granting accommodations could affect its profit margin.  But, if because of that greed, the employer terminates employees without consideration of reasonable accommodations, the employer has still violated Title VII.  In the instant case, given the large number of employees, all fired on the same day, because of the same reason, a reasonable trier of fact could conclude that even the Plaintiffs who failed to file an accommodation request were caught up in Defendant's anti-religious motivations or its greed in not wanting to accommodate exemption requests.  For these reasons, it is not necessary that the Court examine the details of each Plaintiff's accommodation requests.  It is enough to see that Defendant's conduct gives rise to an inference from which a reasonable jury could find that Defendant violated Title VII.

Since Defendant raised arguments related to certain individuals, Plaintiffs will respond to those specific arguments.  Defendant contends that twenty out of the sixty-nine claims should be dismissed because these Plaintiffs did not submit a sufficiently detailed religious exemption form.  Inherent in this argument is that Defendant admits that forty-nine Plaintiffs adequately stated their religious opposition to the vaccines.  Yet all sixty-nine Plaintiffs were terminated, reinforcing the fact that each individual religious conviction is irrelevant.  What is relevant is Defendant's decision

8

to ignore any possible accommodations (if an accommodation was even necessary as several Plaintiffs had worked as teleworkers for years before the pandemic) and let go of anyone refusing to conform to vaccination.

### 6. Failure to file exemption requests

Plaintiffs **Badillo, Johnson, Kemon** and **Rahm** did not submit exemption requests forms. Defendant contends that all four claims should be dismissed because of that reason. Defendant does not address the futility argument raised by these Plaintiffs. Defendant does not contend that it would have granted exemptions had these four Plaintiffs submitted a sincere, well-worded exemption request form. The entirety of Defendant's conduct proves the contrary. The law does not require a party to perform a futile act. *Werbowsky v. Collomb*, 362 Md. 581, 620, 766 A.2d 123, 144 (2001). If even the most well-articulated exemption requests were denied, how could Plaintiffs reasonably believe their requests would be granted had they submitted one?

### 7. "Patently defective" exemption requests.

Defendant points to the exemption requests of **Brooks, Cross-Dawkins, Davis, DiGioia, Fandozzi, George, Grieco, Hobbs, Kollings, Kuhn, Parrish, Sacher, Spooner, Ward, Werner**, and **Zapletal.** Plaintiffs disagree with Defendant's assessment of the merits of these exemption requests and will address each individually. However, for the reasons stated directly above, even if these Plaintiffs inartfully or inadequately expressed their religious opposition to the vaccines, they were still caught up in Defendant's self-righteous and unwavering opposition to religious exemption requests. A trier of fact could reasonably conclude that, had they improved on their exemption request forms, their exemption would still have been denied. Defendant has offered no evidence to the contrary and its attitude toward this case and all of the other Plaintiffs is evidence that improvements to the requests would have proven futile.

9

Most of these Plaintiffs harkened to their conscience.  Long before Jesus Christ walked the earth, the Greek philosopher Plato stated that an unexamined life is not worth living.  The religious tool humans use to examine their own life is "conscience."  Certainly "conscience" can exist apart from religion but when a religious person forms, and later exercises, his or her conscience, that is a religious act.  It is often entwined with scripture, religious teachings, philosophy, and other metaphysical studies.  But the mere fact that an areligious person has a conscience does not mean that for a religious person the exercise of conscience is divorced from religion.  In *Fowler v. Rhode Island*, 345 U.S. 67, 70 (1953) the Supreme Court stated that "it is no business of courts to say ... what is a religious practice or activity."  The Court in *Gardner-Alfred v. Fed. Reserve Bank of New York*, No. 22-CV-1585 LJL, 2023 WL 253580, at *18 (S.D.N.Y. Jan. 18, 2023) quoted *Fowler*, *supra*, and explained that courts have been cautioned against trying to determine what is a religious belief.  The Court said that "Title VII defines religion capaciously to include 'all aspects of religious observance and practice, *as well as belief*.'"  *Gardner-Alfred*, 2023 WL 253580, at *18 (quoting 42 U.S.C. § 2000e(j)) (emphasis in original).  The inquiry as to whether a person's belief is religious is twofold: "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious."  *Patrick v. LeFavre*, 745 F.2d 153, 157 (2d Cir. 1984) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)); *see also Together Employees v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 441 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (holding that the court will assume that "plaintiffs can establish a *prima facie* case that a *bona fide* religious belief prevents them from taking the COVID-19 vaccine").

The Supreme Court warned that courts have a limited function in determining whether religious beliefs are protected.  *See*, *e.g.*, *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981).  *See also Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 818 (2d Cir.

2003).  The Supreme Court explained that "[t]he determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task."  *Thomas*, 450 U.S. at 714.  A court's review of what constitutes a religious objection is also "understood to be, without qualification, a highly 'subjective definition of religion, which examines an individual's inward attitudes towards a particular belief system.'"  *United States v. Manneh*, 645 F. Supp. 2d 98, 108 (E.D.N.Y. 2008).  The Supreme Court explained in the context of a conscientious objector case:

> The validity of what he believes cannot be questioned.  Some theologians, and indeed some examiners, might be tempted to question the existence of the registrant's 'Supreme Being' or the truth of his concepts.  But these are inquiries foreclosed to Government.  As Mr. Justice Douglas stated in *United States v. Ballard*, 322 U.S. 78, 86, 64 S.Ct. 882, 886, 88 L.Ed. 1148 (1944): 'Men may believe what they cannot prove.  They may not be put to the proof of their religious doctrines or beliefs.  Religious experiences which are as real as life to some may be incomprehensible to others.'  Local boards and courts in this sense are not free to reject beliefs because they consider them 'incomprehensible.'  Their task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious.

*Seeger*, 380 U.S. at 184–85.

### 8.  Individual Claims

### A.  Brooks.

**Jason Brooks** specifically informed Defendant that the vaccines violate his sincerely held religious beliefs.  *See* ECF No. 56-3, ¶49.  He also stated that he had not let his children be vaccinated for that reason for the past fifteen years.  *Id.*  Defendant should have considered this enough to trigger an exemption.  Defendant did not question or express doubt about the sincerity of Mr. Brooks' statements. *See* ECF No. 56-6, 87-88.  It did not state that the exemption request form lacked enough detail or failed to link his religious beliefs to his opposition to the vaccines. *Id.* at 89.  Its failure to inquire further demonstrates its inherent antagonism toward the religious exemption process.  *Id.* at 87-88.  If Defendant were sincerely interested in addressing religious

accommodation requests, it would have engaged in further inquiry.  At issue in this case is not merely the sincerity of the Plaintiffs but also the sincerity of Defendant.  Defendant's lack of sincerity, and its illegal rejection of employees because of their religious beliefs, is demonstrated by its conduct as to all of the Plaintiffs and by its failure to inquire further in this particular claim.

B.      Cross-Dawkins.

**Clarice Cross-Dawkins** referred to the Bible and her opposition to idolatry.  This clearly expresses a religious opposition to the vaccines.  *See* ECF No. 56-12, 41-44.  The fact that Defendant does not understand this religious belief does not mean it is not religious.  Maybe the decision-maker for Defendant has never read the Bible.  But Cross-Dawkins referred to religion when she explained her opposition to the vaccines.  *Id.*  Defendant never asked this Plaintiff to explain the religious nature of her opposition, to identify what parts of the Bible were offended by the vaccines, or otherwise to explain why her religion did not permit her to be vaccinated.  *See* ECF No. 56-7, 14.

C.      Davis

John Davis cited his religious belief as a member of the "Liberty of Conscience" religion.  *See* ECF No. 56-12, 45.  As stated in his position statement to the E.E.O.C.:  "Liberty of Conscience group, a Christian religion, allows its followers to do their own research to determine if they have a moral opposition to a medical procedure such as a vaccine.  See Vaccine Mandates and the Christian's Liberty of Conscience: From 2021 to 1721 and Back Again (https://founders.org/2021/08/13/vaccine-mandates-and-the-christians-liberty-of-conscience-from-2021-to-1721-and-back-again/)."  This religion allows a follower to make its own findings and determine whether something is morally acceptable, i.e., taking the COVID-19 vaccine.  Because Davis, in his own research, did not conclude the vaccine is safe, it would be immoral and

12

against his religious beliefs to receive it.  *Id.*  Whether MITRE understood Davis's beliefs has no bearing on whether those beliefs are sincerely held.  *See* What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, § K.12, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ("EEOC guidance explains that the definition of religion is broad and protects beliefs, practices, and observances with which the employer may be unfamiliar").  In addition, the U.S. Supreme Court has never issued a definition of religion for purposes of the First Amendment.  *See* Clements, *Defining "Religion" in the First Amendment: A Functional Approach,* 74 Cornell L. Rev., 532 (1989).  What is clear in U.S. law is that conscience is at the heart of what is considered "religion."  Clark, *Guidelines for the Free Exercise Clause*, 83 Harv. L. Rev. 327, 340 (1969).

### D.    DiGioia

Vince DiGioia specifically referred to daily devotions, religion, conscience, and his faith in God as his basis for opposing the vaccines.  *See* ECF No. 56-12, 51.  Again, Defendant did not engage in any dialog to determine why DiGioia considered those aspects of religion to be in conflict with the vaccines.  *See* ECF No. 56-7, 51.  In short, DiGioia expressed religious opposition to the vaccines and there is no evidence in the record to indicate that his religious opposition was insincere.  *Id.*

### E.    Fandozzi

Jeanne Fandozzi kept her exemption short but explicitly referenced her belief in God.  She viewed vaccination as "against God's will."  *See* ECF No. 56-12, 71.  Defendant never asked for a further explanation.  *See* ECF No. 56-7, 81-82.  By referencing God's will as a basis for her opposition, Fandozzi sufficiently informed Defendant that her opposition was religious in nature

13

and Defendant has no evidence to suggest she was insincere.  ECF No. 56-12, 71.

### F.     George

Gloria George expressed that her sincerely held religious beliefs conflicted with the vaccines.  *See* ECF No. 56-3, ¶65.  Although she did not cite chapter and verse from the Bible to justify this statement, or otherwise explain her religious opposition, Defendant never demanded that she do so and had no evidence that she was insincere.  *See* ECF No. 56-8, 8.

### G.     Grieco

Chris Grieco stated that his "moral conscience" informed his opposition to the vaccines. "Moral conscience" implies religious considerations.  Defendant did not question Grieco further or ask him to explain the religious nature of moral conscience.

### H.     Hobbs

James Hobbs referred to freedom of conscience and added that his conscience was formed by his religious beliefs, his belief in God, and Christian worldview.  *See* ECF No. 56-13, 13-16. He expressed a religious foundation for his moral and ethical choices and referenced the "religious spirit."  *Id.*  Defendant did not question Hobbs further or ask him to explain the religious nature of moral conscience.  *See* ECF No. 56-8, 50.

### I.     Kollings

Jason Kollings expressed deep religious beliefs in "existence before essence."  *See* ECF No. 56-13, 34.  This concept is espoused and explained by Jean Paul Sartre, Soren Kierkegaard and Martin Heidegger and a pithy statement of existentialism.  Although existentialism may be better categorized as a matter of philosophy, and some of its proponents were atheists, it would be improper for Defendant or this Court to delve into the niceties of the differences between religion and philosophy.  After all, even the first existential philosopher, Kierkegaard, was also a theologian

14

who wrote on Christianity, morality, religion, and ethics. And, regardless, even if existentialism is considered atheistic, discrimination based on a Plaintiff's atheistic beliefs can be considered religion for purposes of Title VII. *See E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 621 (9th Cir. 1988); *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013). Additionally, Kollings specifically mentioned religion, and damnation to anguish and suffering. ECF No. 56-13, 34. It is hard to imagine a more religious concept than heaven and hell.

> **J.   Kuhn**

Aaron Kuhn referred to his sincerely held religious beliefs, the Roman Catholic Church, and freedom of conscience. *Id.* at 39. One of the most basic tenets of the Catholic catechism is freedom of conscience. Vatican II document *Dignitatis Humanae*, states: "He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters." Again, Kuhn's religious exemption request sufficiently identifies the fact that his opposition to the vaccine is based in his religious views. *Id.*

> **K.   Parrish**

Nicole Parrish stated that the vaccines "violate my deeply held religious convictions." *Id.* at 67. Defendant did nothing to question that statement, call it into doubt, or contend that her statement did not sufficiently explain her religious opposition. *See* ECF No. 56-9, 99-100.

> **L.   Sacher**

Barbara Sacher stated that the vaccines violated her moral conscience and sincerely held belief that her body is an instrument of God. *See* ECF No. 56-13, 82. Defendant did nothing to question that statement, call it into doubt, or contend that her statement did not sufficiently explain her religious opposition. *See* ECF No. 56-10, 32-33.

> **M.   Spooner**

Carol Spooner referenced her belief in Christianity and the fact that she did not believe that God wanted her to alter her genetics.  *See* ECF No. 56-14, 5.  Defendant did nothing to question that statement, call it into doubt, or contend that her statement did not sufficiently explain her religious opposition.  *See* ECF No. 56-10, 78-79.

### N.   Ward

Ellen Ward stated that she has religious beliefs that conflicted with her accepting vaccination.  *See* ECF No. 56-14, 20.  Defendant did nothing to question that statement, call her sincerity into doubt, or contend that her statement did not sufficiently explain her religious opposition.  *See* ECF No. 56-11, 28.  Instead, it refused to honor her request for a list of questions in writing and refused to follow through with the interview under those conditions.  *Id.*

### O.   Werner

Brandon Werner curtly expressed that he did not believe in putting manmade products in his body.  *See* ECF No. 56-3, ¶106.  Defendant did nothing to question that statement, call it into doubt, or contend that his statement did not sufficiently explain his religious opposition.  *See* ECF No. 56-11, 36.

### P.   Zapletal

Josef Zapletal stated that vaccination "conflicts with my religious and moral beliefs."  *See* ECF No. 56-14, 41.  Defendant did nothing to question that statement, call his sincerity into doubt, or contend that his statement did not sufficiently explain his religious opposition.  *See* ECF No. 56-11, 71-72.

Defendant complains that, as to these twenty Plaintiffs, the proposed amended complaint does not "resolve the defects in the original Complaint."  ECF No. 59, 18.  Interestingly, however, Defendant never states that, had these Plaintiffs done a more complete or artful job of articulating

their religious opposition to the vaccines, it would have retained them.  On the contrary, its conduct as to all sixty-nine Plaintiffs proves the opposite.  No matter how detailed Plaintiffs expressed their opposition to the vaccines, they were fired.  Even the Plaintiffs that referenced Bible verses, opposition to abortion, their body being a temple of the Holy Spirit, religious dogmas, or the Catholic Catechism were fired.  Why is Defendant now complaining that these twenty Plaintiffs should have said more on their exemption forms?  Why did Defendant fail and refuse to tell these twenty plaintiffs the issues it had with their exemption forms or explain its reasoning?  Why did Defendant not allow an appeal process to permit an exchange of ideas and explication of the religious nature of the Plaintiffs' opposition?  The answer to all these questions is that Defendant did not want answers – it wanted to fire employees who opposed the vaccination mandate on religious grounds.

### 9.  Plaintiffs with personal reasons for not being vaccinated.

Plaintiffs **Connery, Crabtree** and **Merrick** fall outside the basic religious discrimination allegations in the complaint.  Connery and Crabtree were actually vaccinated but were opposed to Defendant's unreasonable inquiries into their medical status.  *See* ECF No. 56-3, ¶¶51, 53.  Merrick received the vaccine but was terminated for protesting the requirement that she upload evidence of medical procedures she underwent.  *Id.* at ¶84.  These claims rise or fall on Plaintiffs' contention that Defendant violated the ADA by making inquiries into their health and medical status that were not job related and required by business necessity.

**Bager, Fandozzi, Grieco, Kendall** and **Harris-Aguirre** submitted medical exemption requests.  This court has dismissed the ADA claims and to the extent these Plaintiffs' claims involve the ADA, the Court's earlier ruling stands.  However, this does not affect their religious discrimination claims, to the extent they stated such claims.

17

**10. Counts II-XIV.**

Plaintiffs do not understand Defendant's opposition to inclusion of Counts II to XIV in the amended complaint.  Plaintiffs already stated that they expect the Court to dismiss those counts for the same reasons as previously stated in the Court's memorandum opinion.  Plaintiffs restated those counts merely to protect the record and make sure that the issues are not waived for purposes of appeal.  Plaintiffs do not expect Defendant or the Court to "expend any further effort in defending" these counts.  *See* ECF No. 59, 24.

The only exception to this is Plaintiffs' request that the Court reconsider its order as to MITRE being a state actor.  To this extent, and to this extent only, Plaintiffs are trying to "relitigate" these counts.  Plaintiffs believe that the Court should not have ruled, at this early stage, and without the benefit of discovery, that MITRE is not a state actor.  With all due respect, if that is true, the "state actor" rule is completely eviscerated.  There is no company in the United States that would be considered a state actor if MITRE is not.

**11. Conclusion**

In conclusion, the liberal amendment rule requires that Plaintiffs be allowed to amend the complaint.  The proposed amended complaint would not be futile – by including the specifics as to each Plaintiff and by attaching the exemption request forms, Plaintiffs have stated claims for religious discrimination.  The high standard articulated by the Fourth Circuit related to motions for reconsideration does not apply.  Justice requires that the Court let Plaintiffs address the issues raised by the Court in its Memorandum Opinion and it would be an abuse of discretion to deny sixty-nine Plaintiffs the ability to amend the complaint at least once.

Finally, Plaintiffs ask that the Court reconsider its order related to MITRE's status as a "state actor."

Respectfully submitted,
**KAHN, SMITH & COLLINS, P.A.**

By: _____
   Francis J. Collins, Esq.
   CPF ID No. 8501010118
   Fed Ct. # 04272
   fjcollins@kahnsmith.com
   201 N. Charles Street, Tenth Floor
   Baltimore, Maryland 21201
   (410) 244-1010 (telephone)
   (410) 244-8001 (fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of March 2024, a copy of the above Reply Memorandum was forwarded electronically to:

Christine Costantino, Esquire
Jennifer McGover, Esquire
Ray Baldwin, Esquire
Seyfarth Shaw LLP
975 F. Street NW
Washington, DC 20004

_____
Francis J. Collins, Esq.

19