IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**CHARLES G. MENK, III,** *et al.***,**

    *Plaintiffs***,**

v.

**THE MITRE CORPORATION,**

    *Defendant***.**

Civil No.: 1:23-cv-00053-JRR

**MEMORANDUM OPINION**

This matter comes before the court on Plaintiffs' Motion for Leave to File Amended Complaint. (ECF No. 72; "the Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I. BACKGROUND

On January 9, 2023, Plaintiffs initiated this action seeking redress for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, the First, Fifth, and Fourteenth Amendments to the United States Constitution, and common law wrongful discharge. (ECF No. 1.) Defendant then filed a Motion to Transfer Venue and a Motion to Dismiss. (ECF Nos. 26, 27.) On January 29, 2024, the court denied Defendant's venue motion but granted its motion to dismiss, closing the case. (ECF Nos. 54, 55.) On February 13, 2024, Plaintiffs filed their "Motion to Reopen the Case Under FRCP 52 and 59 and For Leave to Amend Complaint." (ECF Nos. 56, 56-1.) The court denied the motion without prejudice on myriad bases and permitted Plaintiffs to submit a motion for leave to file an amended pleading consisting of Count I (Violations of Title VII) only. (ECF No. 63.) On June 26, 2024, Plaintiffs filed the instant Motion with a proposed amended complaint alleging violations of Title VII. (ECF Nos. 72, 72-1, 73.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course" within 21 days of serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Otherwise, however, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Rule 15(a) counsels that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "The Supreme Court has emphasized that 'this mandate is to be heeded.'" *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The Fourth Circuit's policy is 'to liberally allow amendment.'" *Lavin v. Safeco Ins. Co. of Am.*, No. SAG 22-1788, 2022 WL 17342051, at *1 (D. Md. Nov. 30, 2022) (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). Therefore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson*, 785 F.2d at 509; *see Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 345 (D. Md. 2018) (noting that "[g]ranting leave to amend [] is the default under Rule 15").

Defendant argues that amendment here is futile. (ECF No. 76 at p. 1.) Leave to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510. A court is also permitted to deny as futile a request for leave to amend where the "proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir.

2008)); *see In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) ("[I]n recent years, we have made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny.").

### III.   ANALYSIS

As this court has previously explained, Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's religion." 42 U.S.C. § 2000e-2.  The definition of "religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j). "Because this definition includes a requirement that an employer 'accommodate' an employee's religious expression, an employee is not limited to the disparate treatment theory to establish a discrimination claim.  An employee can also bring suit based on the theory that the employer discriminated against her by failing to *accommodate* her religious conduct."  *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996) (emphasis in original).  Thus, courts generally recognize "two theories in asserting religious discrimination claims," "denominated as the 'disparate treatment' and 'failure to accommodate' theories."  *Id.* at 1017; *see U.S. Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 751 (D. Md. 2021) (same).

Here, Plaintiffs contend that Defendant failed to accommodate their religious objections to Defendant's vaccine mandate. (ECF No. 72-1 at p. 8.)  An employer has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)).  "To

3

state a prima facie failure-to-accommodate claim, an employee must allege that: '(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 509 (D. Md. 2019) (quoting *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017)).

For purposes of ruling on the Motion, the court categorizes the Plaintiffs into three general groups—those who were terminated after submitting religious exemption requests, those who allege constructive termination, and those who failed to submit exemption requests. The court addresses each group in turn.

### A. Plaintiffs Terminated After Submitting Religious Exemption Requests

The following Plaintiffs allege that they sought religious exemption from Defendant's vaccine mandate (ECF No. 72-3 ¶ 21) and were subsequently terminated by Defendant for failure to comply with the mandate (*id.* ¶ 42): Amaral (*id.* ¶ 51, Count 1), Bager (*id.* ¶¶ 63–65, Count 4), Bate (*id.* 72-3 ¶¶ 66–68, Count 5), Berg (*id.* ¶¶ 69–71, Count 6), Blake (ECF No. 72-3 ¶¶ 72–74, Count 7), Boin (*id.* ¶¶ 75–77, Count 8), Brooks (*id.* ¶¶ 78–82, Count 9), Castillo (*id.* ¶¶ 83–85, Count 10), Cross-Dawkins (*id.* ¶¶ 100–102, Count 14), Dalton (*id.* ¶¶ 103–105, Count 15), Davis (*id.* ¶¶ 106–108, Count 16), Delisle (ECF No. 72-3 ¶¶ 109–111, Count 17), Ellis (*id.* ¶¶ 114–116, Count 19), Estrada (*id.* ¶¶ 117–119, Count 20), Fandozzi (*id.* ¶¶ 120–121, Count 21), Freeman (*id.* ¶¶ 122–124, Count 22), Frick (*id.* ¶¶ 125–127, Count 23), George (ECF No. 72-3 ¶¶ 128–130, Count 24), Guensch (*id.* ¶¶ 144–146, Count 26), Hadyk (*id.* ¶¶ 147–149, Count 27), Hobbs (*id.* ¶¶ 153–155, Count 29), Jacoby (*id.* ¶¶ 156–158, Count 30), Jarvi (*id.* ¶¶ 162–164, Count 32), Kendall (ECF No. 72-3 ¶¶ 168–170, Count 34), Kiihne (*id.* ¶¶ 171–173, Count 35), Kim (*id.* ¶¶ 174–175,

Count 36), Kolligs (*id.* ¶¶ 176–177, Count 37), Kuhn (*id.* ¶¶ 178–180, Count 38), Kunz (*id.* ¶¶ 181–182, Count 39), Menk (ECF No. 72-3 ¶¶ 183–187, Count 40), Lynne Miller (*id.* ¶¶ 195–197, Count 43), Montella (*id.* ¶¶ 198–200, Count 44), Neff (*id.* ¶¶ 201–202, Count 45), Pellerin (*id.* ¶¶ 205–207, Count 47), Peng (*id.* ¶¶ 208–210, Count 48), Pizzolatto (ECF No. 72-3 ¶¶ 211–213, Count 49), Rogers (*id.* ¶¶ 217–219, Count 51), Sacher (*id.* ¶¶ 220–222, Count 52), Scarbrough (*id.* ¶¶ 223–224, Count 53), Schwartz (*id.* ¶¶ 225–227, Count 54), Silver (*id.* ¶¶ 228–229, Count 55), Singh (ECF No. 72-3 ¶¶ 230–232, Count 56), Stieber (*id.* ¶¶ 233–235, Count 57), Spooner (*id.* ¶¶ 236–238, Count 58), Tackett (*id.* ¶¶ 239–242, Count 59), Tavenner (*id.* ¶¶ 243–245, Count 60), Wan (*id.* ¶¶ 246–248, Count 61), Ward (ECF No. 72-3 ¶¶ 249–250, Count 62), Werner (*id.* ¶¶ 251–253, Count 63), Wheeler (*id.* ¶¶ 254–255, Count 64), Whittaker (*id.* ¶¶ 256–258, Count 65), Zapletal (*id.* ¶¶ 265–267, Count 68), Zheng (*id.* ¶¶ 268–270, Count 69).

In the proposed amended complaint, each Plaintiff provides background about their religious beliefs and opposition to the vaccine mandate. Plaintiffs' articulated religious beliefs fall into three general categories: opposition to the alleged use of fetal cells in the development of the vaccine, belief that the body is a temple of the Holy Spirit, and conviction that prayer or religious guidance counseled them against taking the vaccine. (ECF No. 72-3 at ¶¶ 26, 28, 30.) Defendant argues that the court should disregard any assertions of Plaintiffs' religious beliefs that were not included in Plaintiffs' requests for accommodation. (ECF No. 76 at p. 10.) While many of the allegations related to Plaintiffs' individual religious histories and current belief systems are irrelevant to the court's analysis here, the above-named Plaintiffs do allege that their purported religious beliefs were communicated to Defendant related to the exemption requests and before their termination. (ECF No. 72-3 ¶¶ 21–22, 25–30.) The court is therefore not persuaded that their allegations are clearly insufficient or frivolous on their face. *Johnson*, 785 F.2d at 510. In the

5

court's view, Defendant's challenge, which would require consideration of evidence not presently before the court, does not suffice to demonstrate futility, and is appropriately reserved for summary judgment or trial.

Defendant additionally argues that Plaintiffs' asserted religious beliefs are not bona fide and thus cannot support a failure-to-accommodate claim. (ECF No. 76 at p. 22–27.) As explained in the court's memorandum opinion at ECF No. 54, a bona fide religious belief must be both sincerely held and religious in nature. *Id.* at p. 27 (quoting *Welsch v. United States*, 398 U.S. 333, 339 (1970)). Critically, the sincerity of a plaintiff's religious belief is a question "for the finder of fact." *Foshee v. AstraZeneca Pharms. LP*, No. CV SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023). A complaint, however, must set forth "sufficient allegations regarding [the plaintiff's] subjective personal beliefs, how those beliefs are related to [the plaintiff's] faith, and how those beliefs form the basis of [the plaintiff's] objection to the COVID-19 vaccination." (ECF No. 54 at p. 32) (quoting *Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 559 (E.D. Va. 2023)). This court dismissed Plaintiffs' Title VII claim in the original complaint because they failed to allege what religion/s they practiced, facts about their individualized, subjective personal religious beliefs, and how such beliefs or practices formed the bases of their objections to MITRE's vaccine policy. (ECF No. 54 at p. 33.)

In the proposed amended complaint, Plaintiffs now describe their individual religious practices and beliefs, as well as how those beliefs form the bases of their objections to Defendant's vaccine policy. Defendant's argument that Plaintiffs' exemption requests are not based on "actual religious beliefs" is not persuasive at this stage. It is not plain on the face of the proposed amended complaint that Plaintiffs' alleged religious beliefs are not bona fide, and Defendant cites no controlling authority in support of its desired outcome on this point and at this stage. Moreover,

determination of whether alleged beliefs are bona fide under Title VII requires a detailed analysis inappropriate for the leave to amend posture. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509, 510-511 (4th Cir. 1986) (granting leave to amend where "the complexity of the arguments advanced by counsel on both sides indicates that the issue . . . is not obviously frivolous.").

The court does not find that the proposed amended pleading is plainly insufficient or frivolous on its face as to the group of Plaintiffs who submitted exemption requests and were terminated.

### B. Plaintiffs Alleging Constructive Termination

Plaintiffs Asfaw (ECF No. 72-3 ¶¶ 53–56, Count 2), Cook (*id.* ¶¶ 95–97, Count 12), Harris-Aguirre (*id.* ¶¶ 150–152, Count 28), Digioia (*id.* ¶¶ 112–113, Count 18), Kevin Miller (*id.* ¶¶ 193–194, Count 42), Parrish (*id.* ¶¶ 203–204, Count 46), and Worrell (*id.* ¶¶ 262–264, Count 67) allege that they were constructively discharged, satisfying the third element of a failure-to-accommodate claim. (ECF No. 72-3 ¶ 43.)[1] Specifically, these Plaintiffs allege they were "constructively terminated because they refused to be vaccinated." *Id.* at ¶ 36.[2]

An employee is constructively discharged when she resigns after being subjected to circumstances of discrimination "so intolerable that a reasonable person would resign." *Green v. Brennan*, 578 U.S. 547, 560 (2016). "[I]ntolerability is a high bar." *U.S. Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 554 F. Supp. 3d 739, 753–54 (D. Md. 2021). As the Fourth Circuit has explained,

> "'Intolerability' is not established by showing merely that a reasonable person, confronted with the same choices as the

---

[1] Plaintiffs Grieco (ECF No. 72-3 ¶¶ 131–143, Count 25) and Rahm (*id.* ¶¶ 214–216, Count 50) allege constructive termination but did not submit exemption requests. Their claims are addressed in Section III.C., *supra*.

[2] Plaintiffs proceeding under a constructive termination theory of liability do not allege individualized facts about the timing of their resignations; they do not allege that they resigned or retired following denial of their exemption requests. The proposed amended complaint alleges: "when it denied the exemptions to Plaintiffs, MITRE failed to explain its reasoning." (ECF No. 72-3 ¶ 20.) Importantly, Plaintiffs concede that not all Plaintiffs submitted exemption requests. *See* Section III. C *supra*.

> employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Blistein v. St. John's Coll.*, 74 F.3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998), *as recognized by Adams v. Moore Bus. Forms, Inc.*, 224 F.3d 324, 327 (4th Cir. 2000). Instead, intolerability "'is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt *compelled* to resign,' . . . that is, whether he would have had *no choice* but to resign." *Id*. (internal citations omitted) (emphasis in original) (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)).

*Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019). "A feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign" and thus do not prove constructive discharge. *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004)).

In support of their constructive discharge claims, Plaintiffs allege that Jason Providakes, Defendant CEO, made statements in video calls with staff "disparaging employees who objected to the vaccine mandate." (ECF No. 72-3 ¶ 16.) Specifically, Mr. Providakes stated he could "'live with' the outcome, if MITRE lost 10 percent of its employees due to noncompliance with its vaccine requirement." *Id*. In another staff call, Mr. Providakes characterized the grounds for religious exemption from the mandate as "very narrow" and explained that accommodation of those who received exemptions could include a different work assignment or a role appropriate for remote work. *Id*. at ¶ 19.

Liberally construed in the totality of alleged circumstances and as a whole, the alleged statements by Defendant's CEO do not constitute circumstances "so intolerable as to compel a

8

reasonable person to resign." *See Williams*, 370 F.3d at 434, *supra*. Indeed, this court has rejected claims of constructive discharge where employees were faced with personally disparaging comments made directly to them, as opposed to mere general remarks conveyed over a company-wide call. *Williams*, 370 F.3d at 434 (finding working conditions were not objectively intolerable where supervisors yelled at an employee and told her she was a poor manager, gave her poor evaluations, and chastised her in front of customers); *Bowen v. Maryland, Dep't of Pub. Safety & Corr. Servs.*, No. CV RDB-17-1571, 2018 WL 1784463, at *9 (D. Md. Apr. 12, 2018) (finding that supervisor speaking to employee in a belittling manner and yelling at her among other "consistent discriminatory and retaliatory behavior" after employee sought medical accommodations did not amount to the high standard of constructive discharge).[3]

The proposed amended complaint is plainly insufficient or frivolous on its face as to the group of Plaintiffs who allege constructive discharge. Counts 2, 12, 18, 28, 42, 46, 67 are futile and therefore may not proceed.

### C. Plaintiffs Who Failed to Submit Exemption Requests

In its order at ECF No. 62 granting leave to file the proposed amended complaint and Motion, this court instructed Plaintiffs that "a defendant employer may not be held liable for failure to exempt a plaintiff employee from an otherwise lawful workplace policy where the plaintiff employee did not request to be exempt." *Id.* at p. 9–10 (quoting *Chalmers*, 101 F.3d at 1019 (holding that "a prima facie case under the accommodation theory requires evidence that she

---

[3] Although not material to the court's determination here, the court notes that all of Defendant's employees, not just those Plaintiffs who did not resign, were allegedly exposed to the very comments and vaccine mandate that these Plaintiffs urge created a work environment so intolerable that any reasonable person would have no choice but to resign. *See Perkins*, 936 F.3d at 212, *infra*. Thousands of employees, including the majority of Plaintiffs, experienced the same workplace conditions and did not resign.

informed her employer that her religious needs conflicted with an employment requirement and asked the employer to accommodate her religious needs")).

That notwithstanding, the proposed amended complaint includes the claims of ten Plaintiffs who did not submit exemption requests. Plaintiff Connery "did not apply for a religious exemption." (ECF No. 72-3 ¶¶ 86–94, Count 11.) Plaintiff Crabtree "was vaccinated and was not opposed to the vaccine on a religious basis." (*Id.* ¶¶ 98–99, Count 13.) Plaintiff Grieco "only filed a medical exemption request." (*Id.* ¶¶ 131–143, Count 25.) Plaintiff Merrick was vaccinated and did not submit an exemption request. Her reason for not uploading her vaccination record was based on her "moral opposition" to Defendant's intrusion into personal medical information. (*Id.* ¶¶ 188–192, Count 41.) Plaintiff Wickizer was not vaccinated, refused to submit proof of vaccination, and did not request an accommodation. (*Id.* ¶¶ 259–261, Count 66.) He was fired before the deadline for submitting proof of vaccination because he "warned Cristina Orfanos by email that there would be repercussions for this illegal action by MITRE, either in this life (meaning legal action) or in the next (before God's throne). The next day his division director, Dave Scher, and his department head, Kevin Dedford, called him and told him he was being fired for cause, for personally threatening a vice president." *Id*.

These Plaintiffs did not seek religious exemption from Defendant's vaccine mandate; nor do they allege how Defendant might have been motivated to avoid accommodating their alleged religious beliefs when—according to Plaintiffs' allegations—Defendant was aware of neither their religious beliefs nor a conflict between these ostensible beliefs and COVID-19 vaccination. *See Friend v. AstraZeneca Pharms. LP*, No. CV SAG-22-03308, 2023 WL 3390820, at *3 (D. Md. May 11, 2023) ("In the absence of any other allegations that Plaintiff's religious beliefs were

communicated to AstraZeneca in some other fashion, his religious discrimination claim must be dismissed.").

Although Plaintiffs acknowledge that in the Fourth Circuit the "second element of a claim of religious discrimination" requires that "the employee inform the employer of the belief that is creating the conflict at work," they argue that *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, a 2015 opinion of the Supreme Court, "implicitly overruled" this second element. (ECF No. 72-1 at p. 29, citing *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768, 773 (2015)). The court does not agree, and follows the instruction of the Fourth Circuit that describes the *Abercrombie* decision as "clarifying" the analysis for disparate treatment claims based on failure to accommodate. *Abeles v. Metro. Washington Airports Auth.*, 676 F. App'x 170, 176 (4th Cir. 2017); *Brennan*, 361 F. Supp. 3d at 509. This interpretation is supported by the fact that the Fourth Circuit has continued, after *Abercrombie*, to require a failure-to accommodate plaintiff to prove that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (citation omitted). This is further supported by repeated decisions of this court. *See, e.g. Brennan*, 361 F. Supp. 3d at 509; *Niederberger v. Wegmans Food Markets, Inc.*, No. CV JKB-23-2759, 2024 WL 286609, at *3 (D. Md. June 6, 2024); *Shigley v. Tydings & Rosenberg LLP*, No. CV JKB-23-02717, 2024 WL 2751117, at *3 (D. Md. May 29, 2024); *Friend*, 2023 WL 3390820, at *3.

Importantly, in *Abercrombie*, the Supreme Court held that a plaintiff not need prove an employer has "actual knowledge of the need for an accommodation;" rather, the plaintiff must demonstrate that the employer acted under motivation to avoid accommodation of a religious

11

practice. 575 U.S. at 772. This is reflective of the circumstances in *Abercrombie* where the employer perceived the individual plaintiff's need for a religious practice accommodation based on observation that she donned a headscarf, and, upon that assumption, declined to hire her. *Id.* at 770. Conversely, here, Plaintiffs' proposed amended complaint does not allege facts to allege plausibly that Defendant's choice to terminate Plaintiffs who failed to submit exemption requests was motivated by the need for accommodation of a religious belief. Plaintiffs assert that before the vaccine mandate, Defendant had no opportunity or occasion to learn of Plaintiffs' religious views. (ECF No. 72-3 ¶¶ 46–47.) Further, Plaintiffs acknowledge that certain employees were opposed to the vaccine mandate for non-religious reasons; and Defendant offered its employees medical and religious accommodation request forms. *Id.* at ¶ 14. Accordingly, *Abercrombie* does not compel a finding here that Plaintiffs who failed to submit religious exemption requests have alleged facts sufficient on their face to plead a failure-to-accommodate claim.

Finally, five Plaintiffs who did not submit a request for exemption argue they did not do so because they believed requesting accommodation would be futile. (ECF Nos. 72 at p. 28; 72-3 ¶ 36.) Plaintiffs assert that under the futile gesture doctrine, futile acts are not required to allege a plausible claim. (ECF No. 72-1 at p. 28.) This court has found that when a job applicant alleges unconstitutional discrimination in hiring, he or she need not "translate [] desire for a job into a formal application where that application would be merely a 'futile gesture.'" *Carney v. Adams*, 592 U.S. 53, 66 (2020) (*Intl. Broth. of Teamsters v. U.S.*, 431 U.S. 324, 365–66 (1977)); *see Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990) ("It is now accepted that the failure to apply for a job does not preclude recovery if a claimant can demonstrate he would have applied but for accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied.").

Plaintiffs, however, fail to cite authority that applies the futile gesture doctrine in the context of a failure-to-accommodate claim. Therefore, the court declines to find that Plaintiffs Badillo (ECF No. 72-3 ¶¶ 57–62, Count 3), Grieco (*Id.* ¶¶ 131–143, Count 25), Johnson (*Id.* ¶¶ 159–161, Count 31), Kemon (*Id.* ¶¶ 165–167, Count 33), or Rahm (*Id.* ¶¶ 214–216, Count 50) were not obliged to seek accommodation from Defendant on the basis of futility. These Plaintiffs did not submit exemption requests or otherwise communicate their religious objections to Defendant and thus have not plead the elements of a failure-to-accommodate claim. *See Friend*, 2023 WL 339080, at *3, *infra*.

For the reasons stated above, and pursuant to this court's memorandum opinion at ECF No. 62 and the authorities cited therein, Counts 3, 11, 13, 25, 31, 33, 41, 50, and 66 are futile and may not proceed.

### IV. CONCLUSION

For the reasons set forth herein, by separate order, Plaintiffs' Motion (ECF No. 72) will be GRANTED IN PART and DENIED IN PART as follows: the Motion is granted as to proposed amended complaint Counts 1, 4–10, 14–17, 19–24, 26–27, 29–30, 32, 34–40, 43–45, 47–49, 51–65, 68–69; and is denied in all other respects.

December 2, 2024                                    ___/S/_____
                                                    Julie R. Rubin
                                                    United States District Judge