IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHARLES G. MENK, III,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **THE MITRE CORPORATION,** <br><br> *Defendant*. | Civil No.: 1:23-cv-00053-JRR |

### MEMORANDUM OPINION AND ORDER

Pending before the court are "Plaintiff's [sic] Motion to Alter or Amend the Judgment of Counts 2, 12, 18, [25,] 28, 42, 46, and 67 of the Amended Complaint Pursuant to FRCP 59 and/or FRCP 60," pertaining to Plaintiffs' constructive termination claims (ECF No. 84; the "Constructive Termination Motion"),[1] and "Plaintiff's [sic] Motion to Alter or Amend the Judgment of Count 66 of the Amended Complaint Pursuant to FRCP 59 and/or FRCP 60," pertaining to the court's dismissal of Plaintiff Charles Wickizer's Title VII failure to accommodate claim (ECF No. 85; the "Count 66 Motion"). The court has considered the parties' papers;[2] no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

I.  **Federal Rules of Civil Procedure 54(e), 59(e), and 60(b)**

As a threshold matter, Plaintiffs' motions are not properly brought under Federal Rules of Civil Procedure 59 and/or 60. Rules 59(e) and 60(b) do not apply to interlocutory orders. *Am.*

---

[1] The Constructive Discharge Motion omits Count 25 (Plaintiff Grieco), which the court believes was an oversight. Plaintiff Grieco's Count 25 for constructive termination was among those the court's order at ECF No. 82 excluded from inclusion in the Amended Complaint Plaintiffs sought leave to file. Further, Plaintiffs' reply in support of the Constructive Discharge Motion makes reference to Plaintiff Grieco's Count 25 for constructive discharge. The court therefore includes Count 25 for purposes of this opinion and order.

[2] By order at ECF No. 95, the court directed Defendant to file a sur-reply of no more than 10 pages narrowly tailored to address Plaintiffs' argument set forth in its Reply, which Plaintiffs had never before raised in this case and which they did not raise in their opening brief in support of the Constructive Discharge Motion. (*See* Defendant's sur-reply at ECF No. 98.)

*Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Orders "that adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). This court's order which the instant motions challenge did not adjudicate all claims, rights, and liabilities of the parties. The motions will, therefore, be assessed under Rule 54(b). *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

A motion for reconsideration of an interlocutory order is "not subject to the strict standards applicable to motions for reconsideration of a final judgment" under Rules 59(e) and 60(b). *Am. Canoe Ass'n*, 326 F.3d at 514. The court, however, looks to the standards applicable to relief afforded under Rules 59(e) and 60(b) for guidance in considering Rule 54(b) motions. *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (citing *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 449 (D. Md. 2015)). Reconsideration under Rule 59(e) is "available on only three grounds: 1) an intervening change in controlling law; 2) previously unavailable evidence; or 3) to correct a clear error of law or prevent manifest injustice." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 290 (4th Cir. 2021) (quoting *Pac. Ins. V. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). Rule 60(b)(1)(6) allows for relief from a final order for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(1)(6). "Although there may be many valid reasons to reconsider an order, 'a motion to reconsider is not a license to reargue the merits or present new evidence' that was previously available to the movant." *Carrero*, 310 F. Supp. 3d at 584 (quoting *Royal Ins. Co. of Am. V. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 677 n.1 (D. Md. 2001)).

## II.     Constructive Termination Motion

Plaintiffs identify no intervening change in controlling (or persuasive) law or evidence not previously available. Plaintiffs urge the court to reconsider its dismissal of the constructive

termination claims on two grounds – both of which rest on the conclusion that the court applied the wrong law. Specifically, in their Constructive Discharge Motion, relying exclusively on cases out of the Sixth and Seventh Circuits (and district courts therein), Plaintiffs first argue their claims should be reinstated based on the legal theory that a constructive discharge claim can be based on circumstances where "the handwriting was on the wall and the axe was about to fall" or, said another way, where the "employer's actions . . . communicate to the employee that he 'immediately and unavoidably will be terminated.'"  (ECF No. 84-1 at pp. 1–2.)  *See Lindale v. Tokheim Corp.*, 145 F.3d 953, 956 (7th Cir. 1998); *Beverly v. Abbott Labs.*, 107 F.4th 737, 746 (7th Cir. 2024) (quoting *Wright v. Ill. Dept. of Child & Fam. Svcs.*, 798 F.3d 513, 529 (7th Cir. 2015)).

Later, in their Reply, Plaintiffs argue for the first time that constructive discharge claims for failure to accommodate an employee's religious practice or belief are assessed according to a different legal framework than other constructive discharge claims, like, for example, constructive discharge in the context of sex harassment.  Plaintiffs urge that the proper consideration is not whether Plaintiffs adequately allege facts to meet the oft-recited "intolerable workplace conditions" standard, but rather whether Plaintiffs adequately allege that their workplace conditions effectively forced them to choose between their God and their work; and that, Plaintiffs argue, is *per se* intolerable as a matter of law, and, therefore, adequate to state a claim of constructive discharge.

As referenced above, Plaintiffs raise these arguments for the first time in the instant briefing despite the fact that the law they cite was available long before Defendant's motion to dismiss and the court's subsequent order which they now ask the court to reconsider; and no new facts or evidence have been discovered on which these motions are based.  Therefore, the court considers below the cases Plaintiffs rely on to assess whether the court made a clear error of law and, if it

did not, to ensure manifest injustice would not result were the court to disallow the claims subject to the Constructive Discharge Motion.

In every case on which Plaintiffs rely to urge the court that their constructive discharge claims were wrongly dismissed, the aggrieved plaintiff or plaintiffs alleged 1) they sought workplace accommodation of their religious practice or belief (or health condition in the case of *Crabill v. Charlotte Mecklenburg Bd. of Ed.*, 423 F. App'x 314 (4th Cir. 2011)); 2) the requested accommodation was expressly denied by the employer; and 3) the plaintiff/s resigned[3] after receiving notice of the employer's denial of the accommodation request instead of waiting to see whether or not the employer would terminate their employment.

Here, Plaintiffs' proposed Amended Complaint (ECF No. 72-3) alleges in the "Introduction" (applicable to the entirety of the proposed 143-page, 270-paragraph pleading):

> During the fall of 2021, all of the Plaintiffs (with the exceptions noted in the separate counts below) applied for exemptions to the MITRE mandate, seeking reasonable accommodations of their religious practices or observances. In separately numbered counts, each Plaintiff includes below a detailed statement of the particular facts related to that Plaintiff that outlines the religious basis of their objections to the vaccines.
>
> MITRE refused to grant exemptions to any of the Plaintiffs in violation of their rights under Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e, et seq.
>
> Each Plaintiff informed MITRE of the bona fide religious beliefs that conflict with the vaccine mandate. Each Plaintiff requested a religious accommodation—specifically the right to forego the COVID-19 vaccines, and that request was refused. Each Plaintiff was fired for not complying with MITRE's vaccine mandate, and has not been offered reinstatement.

(ECF No. 72-3 ¶¶ 2-4.) Paragraph 20 of the proposed Amended Complaint provides in relevant part: "When it denied the exemptions to the Plaintiffs, MITRE failed to explain its reasoning and provided an unsigned denial letter that did not provide a right to appeal." *Id.* ¶ 20.

---

[3] In the case of Ms. Hadith in *U.S. Equal Employment Opportunity Commission v. Greyhound Lines, Inc.*, Civ. Action No. ELH 19-CV-1651, 2021 WL 5233754 (Nov. 9, 2021), she withdrew from the employment onboarding process.

Turning to each of the counts at issue in the Constructive Termination Motion, Count 2 of the proposed Amended Complaint (Plaintiff Asfaw's claim of constructive termination) states:

> Plaintiff Tamrat Asfaw incorporates by reference the allegations set forth in Paragraphs 1-71 above as if fully set forth herein. Asfaw was employed by MITRE from 2009 to November 2021. He was forced to resign under duress from [sic] due to a MITRE mandatory requirement to take the COVID-19 vaccine "as a condition of employment." He was not given a choice about continuing his employment without accepting vaccination. He considers this to have been constructively terminated [sic].

*Id.* ¶ 53.

Count 25 for Plaintiff Grieco makes clear he never sought a religious-based exemption from MITRE's policy. He resigned because he assumed it would be denied:

> Plaintiff Christopher Grieco incorporates by reference the allegations set forth in Paragraphs 1-50 above as if fully set forth herein. Grieco was employed by MITRE from 2011 to November 2021. Grieco was forced to resign from his job in late November 2021 for not accepting a COVID-19 vaccination and not providing proof of that vaccination to MITRE.
>
> At the time of Grieco's forced resignation, he was working for MITRE as a Group Leader/Supervisor. Grieco was forced to resign after his medical exemption request was denied. Though he has a sincerely held religious belief that conflicts with the vaccine mandate, he believed it would be futile to apply for an exemption request on those grounds.

*Id.* ¶¶ 131-32; *see also* proposed Amended Complaint, ECF No. 72-3 ¶ 36 ("Plaintiff GRIECO opposed the vaccine mandate on religious grounds but only filed a medical exemption request because he correctly believed his religious exemption request would be futile.")[4]

---

[4] In the court's memorandum opinion on Plaintiffs' Motion for Leave to File Amended Complaint, the court evaluated application of the futile gesture doctrine as applied to the failure to make religious accommodation claims of Plaintiffs who did not submit an exemption request but who, nonetheless, sought to recover from MITRE for failure to accommodate their religious beliefs based on their alleged expectation or assumption that MITRE would have denied their requests had they been submitted. (Memorandum Opinion at ECF No. 81 at pp. 12–13.)

Counts 12, 18, 28, 42, 46, and 67 (the balance of constructive discharge claims at issue in the Constructive Discharge Motion) identically plead as follows with changes made only as to the Plaintiff's name and dates of employment:

> Plaintiff [NAME] incorporates by reference the allegations set forth in Paragraphs 1-50 above as if fully set forth herein. [NAME] was employed by MITRE from [DATE] to November 2021. [NAME] was forced to resign and was constructively terminated for not accepting a COVID-19 vaccination and not providing proof of that vaccination to MITRE.

*Id.* ¶¶ 95, 112, 150, 193, 203, 262 as to Plaintiffs Cook, Digioia, Harris-Aguirre, Miller, Gong Parrish, and Worrell, respectively.

In contrast to the cases Plaintiffs cite with the proposed Amended Complaint (at ECF No. 72-3), the proposed Amended Complaint does not expressly plead that, following MITRE's denial of the exemption request, Plaintiffs opted to resign (rather than await the arrival of an expected pink slip). Plaintiffs allege in rather rote fashion that they felt "forced to resign" because they would not "accept" the vaccine for religious-based reasons. The proposed Amended Complaint also does not state whether Plaintiffs resigned before or after the date on which, under MITRE's policy, employees were required to demonstrate vaccination, although it is not plain to this court that, as a matter of law, the pleading is required to include such an express allegation where the allegations make plain that MITRE had set a date on which the vaccine mandate would become effective. Therefore, while this omission is somewhat troubling, it is not clearly fatal. Rather, this omission would appear to figure into whether Plaintiffs adequately plead that they faced objectively intolerable conditions that no reasonable employee would be expected to bear, or plausibly allege conditions on which a reasonable fact finder could conclude the employer acted intentionally to drive out the plaintiff.[5] Construing the alleged facts in a light favorable to

---

[5] As the court previously addressed in its memorandum opinion at ECF No. 82, MITRE's policy was a company-wide policy applied to all employees regardless of protected status or religion unless subject to an exemption.

Plaintiffs, the court is mindful to permit the reasonable inferences arising from the proposed pleading.[6]

In sum, on review of the proposed Amended Complaint, Plaintiffs, albeit imperfectly, make the allegations necessary to pursue their constructive discharge claim based on the "handwriting on the wall theory"[7] and/or based on the argument that Plaintiffs were, in essence, put in the position of choosing between their God and their job.  On review of the proposed Amended Complaint, the court finds that reconsideration of its order is appropriate in compliance with Rule 15's mandate that amendments shall be liberally allowed, and guided by the case law on Rule 54 regarding circumstances where reconsideration is appropriate if the court deems it just and proper (even absent clear error of law, an intervening change in law, newly available evidence, or to avoid manifest injustice).  Against this backdrop, while Plaintiffs' counsel did not clearly mount "handwriting on the wall" and "my God or my job" theories in his previous papers before the court, the court concludes that the essential components of these theories of recovery are adequately present in the proposed Amended Complaint and that manifest injustice would result were Plaintiffs (with one exception)[8] foreclosed from pursuing relief in accordance with same. Therefore, the court finds it just and proper to grant the Constructive Discharge Motion in part.

---

[6] It bears mentioning here that Plaintiffs have had several opportunities to plead and amend their claims – to rectify deficiencies, resolve ambiguities, and otherwise to clarify their claims, following extensive and detailed memoranda opinions on Defendant's responsive motions.  (*See* ECF Nos. 1, 64, 65, 66, 82, and 83.)   A plaintiff is surely entitled to construction of reasonable inferences in their favor; but the rules do not reward muddled pleading with unending favor – especially against the backdrop of the extensive opportunities Plaintiffs have had to fashion and improve their pleading.  At some point, a plaintiff is stuck with her complaint and the case must progress. *Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*, No. 1:18-CV-03133-SAG, 2021 WL 242494, at *2 (D. Md. Jan. 25, 2021) (denying leave to amend because plaintiff "simply cannot be permitted to change its legal theories in perpetuity, serving only to unduly prolong this litigation.").  The question is whether that point is now.

[7] While the Fourth Circuit has not expressly espoused this theory of constructive discharge liability, neither has it rejected it.

[8] To be clear, Plaintiff Grieco has no entitlement to rely on a theory that he quit to avoid certain termination where he never even sought the very accommodation MITRE would have had to deny for Mr. Grieco to meet the barest of constructive discharge elements based on a "handwriting on the wall" theory.  Therefore, the court denies the Constructive Discharge Motion as to Plaintiff Grieco.

### III. Count 66 Motion

As for Plaintiff Wickizer, upon reconsideration, the court is persuaded that Plaintiff Wickizer has plausibly alleged that he had a bona fide religious belief that conflicted with an employment requirement, he informed the employer of his belief, and he was disciplined for failure to comply with the conflicting employment requirement. At this stage, Plaintiff Wickizer's claim is not frivolous.

Accordingly, it is this 11th day of July 2025,

**ORDERED** that the Constructive Discharge Motion at ECF No. 84 shall be, and is hereby, **GRANTED IN PART AND DENIED IN PART** as follows: denied as to Count 25 (Plaintiff Grieco) and granted as to Counts 2, 12, 18, 28, 42, 46, and 67; and further it is

**ORDERED** that the Count 66 Motion at ECF No. 85 shall be, and is hereby, **GRANTED**; and further it is

**ORDERED** that Counts 2, 12, 18, 28, 42, 46, 66, and 67 shall be, and are hereby, reinstated and pending; Defendant shall file an amended answer to accommodate these counts; and further it is

**ORDERED** that, except as set forth herein regarding Counts 2, 12, 18, 28, 42, 46, 66, and 67, the order at ECF No. 82 remains in full force and effect.

                                                                                         /S/  
                                                                                         Julie R. Rubin  
                                                                                        United States District Judge